# United States Court of Appeals
## For the First Circuit

No. 06-1205

NELSON E. VELÁZQUEZ-FERNÁNDEZ AND JOSÉ R. RIVERA-ROSADO,

Plaintiffs, Appellants,

v.

NCE FOODS, INC. AND METROPOLITAN FOOD SERVICES, INC.;
INSURANCE COMPANIES "A" THROUGH "J",

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Torruella, Circuit Judge,
Baldock[*] and Stahl, Senior Circuit Judges.

Carlos G. Colón-Machargo with whom Alicia I. Lavergne-Ramírez, María Victoria Múnera Pascual, María Alejandra Mercado Betancourt, Lavergne-Ramírez & Colón-Machargo, P.S.C. and Múnera & Mercado were on brief for appellants.
Lourdes C. Hernández Venegas with whom Carl Schuster, Ricardo Guzmán-López de Victoria, and Schuster & Aquiló LLP were on brief for appellees.

January 26, 2007

[*]Of the Tenth Circuit Court of Appeals, sitting by designation.

**STAHL**, **Senior Circuit Judge**.    Plaintiffs-appellants Nelson Velázquez-Fernández ("Velázquez") and José Rivera-Rosado ("Rivera") (collectively, "plaintiffs") commenced employment-related claims against NCE Foods and Metropolitan Food Services (collectively, "NCE"), alleging that their employment was terminated because of age and they did not receive overtime payments to which they were entitled.  The district court granted summary judgement in favor of NCE as to both plaintiffs' age discrimination claims and as to Rivera's overtime claims. Velázquez's overtime claims survived summary judgment and were subsequently resolved out of court by the parties.  Having conducted a careful de novo review, we affirm.

Because this case reaches us on summary judgment, we recite the facts in the light most favorable to the nonmoving party, here the plaintiffs.  Burke v. Town of Walpole, 405 F.3d 66, 71 (1st Cir. 2005).  Velázquez and Rivera were long-term employees of NCE Foods, a Puerto Rican business that imports, warehouses, and distributes canned and frozen foods.  Each plaintiff began working at NCE after being transferred from Metropolitan Food Services, a Puerto Rican company that operates cafeterias.  While the two businesses are separate private corporations, they conduct extensive business with each other and share common shareholders.

Rivera's employment at Metropolitan began in 1985.  He was transferred to NCE in 1998 and thereafter held the position of

-2-

warehouse manager at NCE until his termination in 2003, at age 41. Rivera was the highest-ranking NCE employee stationed at the Puerto Rico warehouse. Velázquez began his employment at Metropolitan in 1986 and was transferred to NCE in 1989. He remained at NCE as the second-in-command at the warehouse until 2003, when his position was eliminated and he chose not to accept a new position offered to him. Velázquez was 43 years old when he left NCE.

The parties agree that the conflicts in this case began in 2002, when Edwina Navarro ("Mrs. Navarro") took over the reins of NCE, after her husband, Valentín Navarro ("Mr. Navarro"), NCE's sole shareholder, passed away. The Navarros managed their Puerto Rican-based business from their home in Tampa, Florida. By all accounts, Mr. Navarro was a hands-off owner who left much of the day-to-day details of the warehouse management to Rivera. In contrast, when Mrs. Navarro took over, she was much more engaged in the company's operations and visited the Puerto Rico warehouse more frequently.

In the months leading up to Rivera's discharge in 2003, Mrs. Navarro sent him three memoranda outlining the problems she perceived in his management of the warehouse and its operation, as well as client complaints about delivery timing and quality.[1] At

---

[1]A January 2003 memo from Mrs. Navarro to Rivera raised the following problems: (1) unauthorized delivery of frozen food in vehicles not suitable for that purpose; (2) failure to tell clients of unexpected changes in delivery routes; and (3) failure to organize tasks efficiently, causing delivery problems and

an employee meeting called to discuss the warehouse problems, Rivera became visibly upset and yelled at fellow employees and Mrs. Navarro. Following this outburst, Mrs. Navarro asked Rivera to take a two-week vacation and prepare a report outlining the steps he would take to improve his professionalism.[2] She sent a follow-up letter in June 2003, warning that if Rivera did not make improvements when he returned from vacation, he could be terminated. When he returned, Rivera informed Mrs. Navarro that he had not prepared the requested report. Shortly thereafter Rivera was discharged and the position was filled by Joel Pagán, a 24-year-old who had worked in the NCE warehouse for several years.

Velázquez was originally hired by NCE as a salesperson, but his responsibilities changed as Rivera began to rely on him to help manage the warehouse. During his last five years of employment at NCE, Velázquez did not make any in-person sales calls; instead, he became Rivera's second-in-command in the

---

unnecessary expenses. A March 2003 memo raised problems regarding inventory control at the warehouse, including: (1) poor tracking of products with limited supply; (2) failure to give clients twenty-four hours notice when a product was unavailable; and (3) failure to update the computerized inventory. A June 2003 memo addressed shipment problems including tardiness, lack of coordination among employees, and deliveries made in a company car rather than a frozen truck.

[2]The parties dispute the nature of the report requested by Mrs. Navarro. NCE argues that Mrs. Navarro asked Rivera to prepare a formal, written document. Citing Mrs. Navarro's deposition, plaintiffs argue that she only requested a more informal summary. For our purposes, it is sufficient that Mrs. Navarro requested a report of some kind and Rivera did nothing in response.

warehouse, helping with management and supervision of employees. Even though he was no longer making in-person sales calls, Velázquez continued to have the use of a company car and received a car allowance in addition to his salary, benefits, and bonus. While at NCE, Velázquez had a positive employment record.

At a meeting in April 2003 with Mrs. Navarro and Ángel Rodríguez, President of Metropolitan Food Services, Velázquez was informed that NCE was eliminating his salesperson position. At the meeting, Velázquez was also told that he could remain at NCE in a newly created warehouse assistant manager position. He was told his duties in the new position would be identical to those he had been performing for several years, and that he would continue to receive the same salary, bonus, and benefits, with the exception of the car allowance and use of the company car, which would be eliminated because they were not necessary for the position. Velázquez did not accept the assistant manager position, and never returned to NCE. Ultimately, the new position was split and filled by two employees, ages 22 and 29 at the time of their hire.

Plaintiffs allege that they were terminated based on their age. They rely on the following allegations to support this claim: (1) they were both over the age of 40 when their employment at NCE ended; (2) they both had excellent work records -- Rivera argues that Mrs. Navarro's complaints about his performance were simply "subterfuge" designed to facilitate his termination; (3) the

assistant manager and manager positions were subsequently filled by younger workers; and (4) Iván Navarro, son of Mrs. Navarro and a manager at NCE, once told Rivera that "with Velázquez's salary, [NCE] could afford two younger employees."

Plaintiffs brought suit against NCE in the United States District Court for the District of Puerto Rico. They alleged age discrimination under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.; Puerto Rico's version of the ADEA, known as Law 100, 29 P.R. Laws Ann. § 146 et seq. (2000); and Puerto Rico's Law 80, 29 P.R. Laws Ann. § 185(a) (2000), which prohibits termination without just cause. They also claimed they were non-exempt employees entitled to overtime compensation, under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. (2001), and Puerto Rico's version of the FLSA, known as Law 379, 29 P.R. Laws Ann. § 271 et seq. (2003).

The district court granted summary judgment as to plaintiffs' age discrimination claims, holding that Rivera failed to show pretext, and Velázquez did not suffer an adverse employment action. The lower court also granted summary judgment as to plaintiffs' Law 80 claims, concluding that NCE had good cause to discharge Rivera, and did not terminate Velázquez. Finally, the district court entered summary judgment as to Rivera's overtime claims, finding that he qualified as an exempt executive. The court allowed Velázquez's overtime claims to proceed and the

parties settled those claims out of court. Plaintiffs timely appealed the district court's entry of summary judgment.

## I. DISCUSSION

### A. Standard of Review

This court reviews a district court's grant of summary judgment <u>de</u> <u>novo</u>. <u>Fontánez-Núñez</u> v. <u>Jannsen Ortho LLC</u>, 447 F.3d 50, 54 (1st Cir. 2006). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." <u>Ingram</u> v. <u>Brink's, Inc.</u>, 414 F.3d 222, 228-29 (1st Cir. 2005).

### B. The Age Discrimination Claims

Plaintiffs brought age discrimination claims against NCE under both federal and Puerto Rico law. Under the federal ADEA, an employee must "prove that he would not have been fired but for his age." <u>Rivera-Aponte</u> v. <u>Restaurant Metropol #3, Inc.</u>, 338 F.3d 9, 11 (1st Cir. 2003). Where, as here, there is no direct evidence of discrimination, the <u>McDonnell Douglas</u> burden-shifting analysis applies. <u>Id.</u> (citing <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792, 802-05 (1973)). Under this analysis, a plaintiff establishes a <u>prima</u> <u>facie</u> claim of age discrimination by showing that: (1) he

-7-

was at least 40 years old; (2) he met the employer's legitimate job performance expectations; (3) he experienced an adverse employment action; and (4) the employer had a continuing need for the services provided previously by the plaintiff. See, e.g., Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). The burden of production then shifts to the employer to put forth a legitimate, nondiscriminatory reason for the adverse job action. Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). Having done so, the final burden of persuasion rests with the employee to show, by a preponderance of the evidence, that the reason offered by the employer is merely a pretext and the real motivation for the adverse job action was age discrimination. Id. at 1091-92.

Under Puerto Rico's Law 100, a plaintiff has the initial burden to establish a prima facie case by "(1) demonstrating that he was actually or constructively discharged, and (2) alleging that the decision was discriminatory." Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001). Having met this rather undemanding requirement, the burden of persuasion shifts to the employer to show, by a preponderance of the evidence, that it had "good cause" for its action. See id. If the employer shows good cause, then, as under the ADEA, the burden of persuasion returns to the employee to show "that the employer's decision was motivated by age discrimination." Cardona Jiménez v. Bancoamerica de Puerto Rico, 174 F.3d 36, 43 (1st Cir. 1999). Ultimately, under Law 100,

if the employer can establish good cause, the employee is faced with the same burden of persuasion as an employee bringing suit under the ADEA.  Id.

1. Rivera

Rivera's age discrimination claims under the ADEA and Law 100 fail because he has not "proffered sufficient admissible evidence, if believed, to prove by a preponderance of the evidence . . . that the employer's justification . . . was merely a pretext for impermissible age discrimination."  Woodman, 51 F.3d at 1092. Viewing the facts in the light most favorable to Rivera's claim, it is likely that he has made out a prima facie case under both the ADEA and Law 100.  However, we need not definitively decide this question because it is clear he has failed to muster the evidence required to suggest pretext.

Rivera asks us to infer that age discrimination was the real cause of his termination; yet he provides almost no evidence from which we could draw such an inference.  Rivera notes that he was over 40 at the time of his termination, and that he was replaced by a younger worker.  Beyond this, Rivera offers only one additional fact upon which we could base an inference -- that Iván Navarro, an NCE manager and the son of Mrs. Navarro, commented that NCE could afford to pay two younger workers with Velázquez's salary.  This comment cannot support an inference of pretext because it was one stray remark, and was made by a non-

decisionmaker.  González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray workplace remarks', as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.").

Lacking favorable facts, Rivera rests much of his argument on conclusory allegations.  He asserts, without proof, that the complaints that Mrs. Navarro made about his job performance were simply "subterfuge."  He does not allege that he didn't make the mistakes that she complained of; rather, he suggests that the errors occurred only in "rare situations" and were "within the ordinary boundaries of the normal course of business."  In essence, he asks us to excuse his performance by replacing Mrs. Navarro's business judgment with his own, an untenable position.  See Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005) ("[A]n employee's opinion of the efficacy of an employment decision, standing alone, cannot supplant the employer's business judgment."); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 537 (1st Cir. 1996) ("Courts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions.") (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)).

Plaintiffs are correct that the Supreme Court has held that proof that the employer's explanation is "unworthy of credence" is one form of "circumstantial evidence that is probative of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). However, in this case, no proof has been put forth that Mrs. Navarro's repeated memos regarding Rivera's underperformance were inaccurate, unbelievable, idiosyncratic, or misleading. See Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986) ("The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext . . . .").

In the end, on the record presented here, there is simply no basis to infer that the legitimate business decisions made by Rivera's employer were motivated by age animus. Without such evidence, Rivera's claims under the ADEA and Law 100 must fail as a matter of law.

2. Velázquez

Velázquez's ADEA and Law 100 claims do not succeed either, but for a more elementary reason. He has not made out a prima facie claim of age discrimination under either statute because he did not suffer an adverse employment action, through either actual or constructive discharge. See Suárez, 229 F.3d at 54 ("Just as the ADEA bars an employer from dismissing an employee because of his age, so too it bars an employer from engaging in a

-11-

calculated, age-inspired effort to force an employee to quit."). We have previously held that constructive discharge is shown where "the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Id.

It is evident that Velázquez was not actually discharged, because, though his position as salesperson was eliminated, he was immediately offered a new position as assistant manager, which entailed essentially the same job responsibilities he had been performing for several years. What NCE proposed was the updating of Velázquez's job title to reflect the work he actually performed.

It is also evident that Velázquez was not constructively discharged because the new position entailed the same duties, compensation, and benefits as his old position. See Jorge v. Rumsfeld, 404 F.3d 556, 562 (1st Cir. 2005) (no constructive discharge where employee refused to accept transfer that entailed "no loss of pay, benefits, status, or the like."). The sole difference under the new position would have been the elimination of Velázquez's car allowance and use of the company car -- a change based on the fact that Velázquez had not performed in-person sales calls for some time, and the new position would not require him to do so. Generally, a constructive discharge claim cannot be based solely on the elimination of an allowance, where the job duty that was funded by the allowance was also eliminated based on a

legitimate business judgment.  This is so because elimination of such an allowance usually will not change working conditions so significantly that a reasonable person would feel compelled to resign.  Súarez, 229 F.3d at 54; see also Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 46 (1st Cir. 2003) (no constructive discharge where employee was on extended sick leave and employer asked her to "give back the company car and other equipment, inventory, and documents").  For example, if a company pays its employees an allowance to fund the purchase of uniforms, and later decides that uniforms will no longer be used, elimination of the uniform allowance -- with nothing more -- would not constitute constructive discharge.  Likewise, if a company provides a travel allowance to fund employee business travel, but later, due to market conditions or technology advances, such travel is no longer necessary or feasible, termination of the travel allowance would not ordinarily constitute a constructive discharge.

Because Velázquez has not shown actual or constructive discharge as a matter of law, he has not made out a prima facie case under the ADEA or Law 100.  Therefore, the district court correctly granted summary judgment as to these claims.

**C. The Wrongful Discharge Claims**

Each plaintiff also brought a claim under Puerto Rico's Law 80, which prohibits discharge "without good cause."  29 P.R. Laws Ann. § 185(a) (2000).  In their brief, plaintiffs present only

a cursory argument in support of these claims, devoting just four sentences to applying the law to the facts of this case. While plaintiffs may have done just enough to forestall actual waiver of their Law 80 claims, their argument is nonetheless without merit. Regarding Rivera, the record shows that he received several written and oral notices about his performance, was sent on vacation to improve his demeanor, and was asked to prepare a report on how he planned to make improvements. Rivera's discharge was not based on "mere whim or fancy," 29 P.R. Laws Ann. § 185(b) (2000), but rather occurred after a series of infractions and warnings and attempts by NCE to remedy the problem. As to Velázquez, his Law 80 claim fails entirely as he was neither terminated from his position nor constructively discharged, for the reasons given above.

**D. Rivera's Overtime Claims**

The district court concluded, and we agree, that Rivera was an exempt executive employee who was not entitled to overtime payments under the FLSA[3] or Puerto Rico's Law 379. FLSA exempts from its overtime requirements employees who are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Because Rivera earned at least $250 a week at the time of his termination, the district court correctly used the

---

[3]The Secretary of Labor adopted revised FLSA regulations in 2004, which do not apply retroactively. Accordingly, we apply the prior version of the regulations. See De Jesús-Rentas v. Baxter Pharmacy Servs. Corp., 400 F.3d 72, 74 n.2 (1st Cir. 2005).

-14-

so-called "short test" to determine whether he was an exempt executive. 29 C.F.R. § 541.1(f) (2001). Under the short test, an employee is exempt if his primary duty consists of (1) "the management of the enterprise . . . or of a customarily recognized department or subdivision" and (2) "the customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.1(f) (2001).

Rivera's former job duties clearly satisfy both requirements. According to Rivera's own deposition, as general manager he was the most senior employee at the warehouse, and was "in charge of the warehouse, and . . . everything that dealt with the warehouse, purchase, sales, dispatch, reporting, everything that the warehouse entailed." In addition, Rivera admitted to supervising his fellow warehouse employees, ranging in number from six to nine workers. It is evident that Rivera's primary duty was managerial. To offset the managerial aspects of the job, Rivera argues that because he also performed clerical and manual duties he should be considered a non-exempt employee. But as we explained in Donovan v. Burger King Corp., under the short test "an employee can manage while performing other work, and . . . this other work does not negate the conclusion that his primary duty is management." 672 F.2d 221, 227 (1st Cir. 1982). Such is the case here.

## II. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment as to all claims.  Costs to appellees.