# United States Court of Appeals
## For the First Circuit

No. 06-1178

OMAR HOYOS,

Plaintiff, Appellant,

CECILIA MEJÍAS JIMÉNEZ,

Plaintiff,

v.

TELECORP COMMUNICATIONS, INC. d/b/a AT&T WIRELESS PCS, INC.;
SUNCOM WIRELESS PUERTO RICO OPERATING COMPANY LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Aníbal Lugo Miranda, with whom Lugo Miranda Law Offices was
on brief, for appellant.
Luis F. Antonetti Zequeira, with whom Goldman Antonetti &
Córdova, P.S.C. was on brief, for appellees.

May 18, 2007

**LYNCH**, **Circuit Judge**.  Omar Hoyos, a supervisor working for Telecorp Communications, Inc.,[1] was fired on October 11, 2003. The company said he was fired after he violated his superior's instructions that he stay away from another employee, Nancy Alomar, who had complained that he had sexually harassed her.  The specific event that precipitated the firing was Hoyos's decision to approach Alomar on October 2, 2003 at a company booth she was staffing at an industry convention at the Westin Río Mar Resort.  On October 3, Alomar had a written complaint about the incident hand delivered to Jaime Pontón, a human resources manager at Telecorp.  Alomar's letter stated that Hoyos had engaged in a pattern of sexual harassment and intimidation, and indicated that Alomar was considering legal action against Telecorp.

Hoyos filed suit on October 6, 2004, in a Commonwealth court, having concluded "weeks after [he] was fired, . . . when [he] put together all the pieces and . . . saw it clear[ly], that [he] was fired because of discrimination on [his] sex."  Hoyos's complaint alleged that his employment had been unlawfully terminated due to his gender in violation of the Puerto Rico Constitution, and that the company had failed to pay him benefits as required by ERISA.  He also asserted claims that he was terminated without good cause in violation of Puerto Rico Law 80,

---

[1]    In May 2001, Telecorp was acquired by AT&T Wireless.  For simplicity's sake, we refer to the defendant as Telecorp throughout.

P.R. Laws Ann. tit. 29, §§ 185a-185k, that he was discriminated against on the basis of his gender in violation of Puerto Rico Law 100, id. §§ 146-155, that he was retaliated against in violation of Puerto Rico Law 115, id. § 194a(a), and that his termination violated the general torts statute, Article 1802 of the Puerto Rico Civil Code, id. tit. 31, § 5141.  The case was removed to federal district court, and after discovery, the court, on defendant's motion, entered summary judgment against Hoyos on all of his claims.  We affirm.

I.

On appeal, Hoyos raises a preliminary issue regarding the effect of Puerto Rico Law 2, id. tit. 32, § 3118, on the removed federal case, and then argues that entry of summary judgment was error.

A.       Puerto Rico Law 2

Hoyos asserts that after he filed his complaint in Puerto Rico court, Telecorp had until November 7, 2004 to file responsive pleadings.  Telecorp did not do so, but rather on November 15 filed a motion in Puerto Rico court requesting a thirty-day extension of time in which to answer the plaintiff's complaint.  That motion was never acted on.  On November 23, Telecorp removed the case to federal court on the basis of diversity jurisdiction and federal question jurisdiction.  See 28 U.S.C. §§ 1331, 1332.  Thereafter, on December 14, Telecorp asked the federal court for another

-3-

thirty-day extension to file an answer, which was allowed. Telecorp then filed an answer in federal court on January 12, 2005.

The gist of Hoyos's argument is that when Telecorp did not file responsive pleadings in Puerto Rico court by the November 7, 2004 due date, the clerk of the Puerto Rico court was required, under Law 2, to enter a default judgment against Telecorp, as Hoyos had requested. Hoyos argues that the federal court, on removal, was obliged by Law 2 to enter such a judgment on Hoyos's claims, and thus it was precluded from reaching the summary judgment motion.

Telecorp's brief unhelpfully replies that Hoyos has waived the issue by not having moved within thirty days of removal to remand the case to the Puerto Rico court. See id. § 1447(c) ("A motion to remand [a] case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996) ("Once a defendant has filed a notice of removal in the federal district court, a plaintiff objecting to removal 'on the basis of any defect in removal procedure' may, within 30 days, file a motion asking the district court to remand the case to state court." (quoting a prior version of 28 U.S.C. § 1447(c))).

-4-

Hoyos does not argue that a remand was required. Instead, he asserts that the district court was obliged to enter a default judgment itself.[2]

Telecorp asserts that Hoyos never brought the Law 2 issue to the attention of the district court. That assertion is not true. The issue was raised, albeit indirectly, in a motion filed eight months after removal and pressed explicitly three months later, on October 19, 2005. The district court never addressed the issue.

We bypass the waiver issue and assume that the Law 2 issue has been preserved. Both here and in the district court, each side has missed the real issue, which is whether Law 2 concerns procedure or substance.

_____

[2] Hoyos also complains that on removal Telecorp failed to provide the district court with certified translations or even original Spanish language versions of the motions filed in the Puerto Rico court about the Law 2 issue. See 28 U.S.C. § 1446(a). In some cases, the failure to provide such documents could be fatal to removal. See id. § 1447(c) (authorizing remand to state court for defects in removal procedure). This defect in removal was not raised with the district court within thirty days of removal, however, see id., and in any event, Hoyos did not request as a remedy, either from the district court or from this court, that the case be remanded to state court. Instead, Hoyos moved the district court to order Telecorp to file translations of the missing documents, see D.P.R. R. 10(b); cf. Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005) (holding that the district court did not abuse its discretion in excluding from consideration documents not filed in English), and argues to this court only that default judgment should have entered in his favor. For the reasons described below, the documents not filed by Telecorp were not material, and so any failure to file these state court pleadings with the district court was harmless.

That is because a federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law, but a federal court applies federal rules of procedure to its proceedings. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92 (1038) (Reed, J., concurring in part) ("[N]o one doubts federal power over procedure.").

Law 2 provides:

> The clerk of the Court shall serve notice on the defendant, with a copy of the complaint, warning him that he shall file his answer in writing, with proof of having served copy thereof on counsel for complainant, or on the latter if he has appeared in his own right, within ten (10) days after said service of notice, if made in the judicial district where the action is instituted, and within fifteen (15) days in all other cases, and also warning said defendant that, should he fail to do so, <u>judgment shall be entered against him, granting the remedy sought, without further summons or hearing</u>. The judge may extend the term to answer <u>only</u> on motion of the defendant, which shall be served on counsel for complainant, or on the latter if he appears in his own right, setting forth under oath the reasons said defendant may have therefor, if from the face of such motion the judge finds just cause. <u>In no other case shall the court have jurisdiction to grant such extension</u>.

P.R. Laws Ann. tit. 32, § 3120 (emphases added).

It is clear that this is a local procedural rule, which does not and cannot govern proceedings in federal court. Rather, the entry of default judgment in federal court is governed by

-6-

Federal Rule of Civil Procedure 55. <u>See</u> <u>Gasperini</u>, 518 U.S. at 427 n.7 ("It is settled that if [a Federal Rule of Civil Procedure] in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law."); <u>Hanna</u> v. <u>Plumer</u>, 380 U.S. 460, 471 (1965) (similar). The federal court granted defendant an extension of time to answer and defendant answered within that period. There was no error in not entering default judgment against Telecorp.

B.      <u>Summary Judgment</u>

We review the district court's grant of summary judgment de novo, taking the facts and all reasonable inferences therefrom in the light most favorable to Hoyos. <u>Guzman-Rosario</u> v. <u>United Parcel Serv., Inc.</u>, 397 F.3d 6, 9 (1st Cir. 2005). Summary judgment is appropriate if "there is no genuine issue as to any material fact[,] and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 322-23 (1986). The nonmovant may not defeat summary judgment "by relying on improbable inferences, conclusory allegations, or rank speculation." <u>Ingram</u> v. <u>Brink's, Inc.</u>, 414 F.3d 222, 228-29 (1st Cir. 2005). We may affirm a grant of summary judgment on any ground supported by the record. <u>Estades-Negroni</u> v. <u>Assocs. Corp. of N. Am.</u>, 377 F.3d 58, 62 (1st Cir. 2004).

We recount the pertinent legal standards on the Puerto Rico law claims.[3]

Puerto Rico Law 80 prohibits dismissal of employees without just cause. Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). Under Law 80, once an employee proves that he was discharged and alleges that his dismissal was unjustified, his employer must establish by a preponderance of the evidence that the discharge was for good cause.[4] Id. Good cause for dismissal is "related to the proper and normal operation of the establishment." Id. (quoting P.R. Laws Ann. tit. 29, § 185b) (internal quotation marks omitted). Violations of an employer's instructions may constitute good cause, Menzel v. W. Auto Supply Co., 662 F. Supp. 731, 745 (D.P.R. 1987), as may improper conduct, Alvarez-Fonseca, 152 F.3d at 28. Although

---

[3]    In his complaint, Hoyos cited to Puerto Rico Law 115, which prevents discrimination against individuals for testifying. P.R. Laws Ann. tit. 29, § 194a(a). That claim was untenable from the outset on these facts and is not raised on appeal.

[4]    Hoyos makes a cursory argument that a jury always must make the determination whether an employer had good cause to discharge an employee. He cites to a Puerto Rico Supreme Court case, Rivera Torres v. Pan Pepín, Inc., 2004 T.S.P.R. 59 (2004), but has not provided a translation as required by this court's rules. See 1st Cir. Loc. R. 30(d). As a result, the case may not be used to support his position. López-González v. Mun. of Comerío, 404 F.3d 548, 552 n.4 (1st Cir. 2005). In any event, Hoyos's interpretation of the law governing Law 80 claims does not conform with our understanding. See, e.g., Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 13 (1st Cir. 2007) (affirming grant of summary judgment to employer on Law 80 claim because discharge of employee was for good cause).

-8-

Law 80 generally refers to multiple episodes of misconduct as constituting good cause, "Law 80 does not invariably require repeated violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await further occurrences." Gonzalez v. El Dia, Inc., 304 F.3d 63, 75 (1st Cir. 2002); see also Delgado Zayas v. Hosp. Interamericano de Medecina Avanzada, 137 D.P.R. 643, 650 (1994); Secretario del Trabajo v. I.T.T., 8 P.R. Offic. Trans. 564 (1979).

Law 100, Puerto Rico's general employment discrimination statute, prohibits employment discrimination on the basis of gender. Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 61 (1st Cir. 2005); Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 854 (1st Cir. 1998). An employee alleging a violation of Law 100 has an initial burden to establish a prima facie case of discrimination by "(1) demonstrating that he was actually or constructively discharged, and (2) alleging that the decision was discriminatory." Velázquez-Fernández, 476 F.3d at 11 (quoting Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001)) (internal quotation marks omitted). Once such a showing has been made, the burden of persuasion shifts to the employer to show by a preponderance of the evidence that the discharge was made for good cause as contemplated by Law 80. Id.; Alvarez-Fonseca, 152 F.3d at 28. If the employer carries its burden, the burden of

persuasion shifts back to the employee to demonstrate that the discharge was motivated by discrimination.  Velázquez-Fernández, 476 F.3d at 11.

Hoyos's state constitutional and Article 1802 claims rest on the theory that he was fired because of gender discrimination. Discrimination in employment is a recognized cause of action under Article 1802, Puerto Rico's general torts statute.  Adams v. Corporate Realty Servs., Inc., 190 F. Supp. 2d 272, 279 (D.P.R. 2002).  Hoyos argues that his firing was unconstitutional because it violated public policy of constitutional magnitude.  Cf. Arroyo v. Rattan Specialities, Inc., 17 P.R. Offic. Trans. 43 (1986) (holding unconstitutional an employer's requirement that an employee submit to a polygraph test).  The viability of these claims rests on Hoyos's Law 80 and Law 100 claims.

The district court correctly summarized the undisputed facts.  We hold, on de novo review of the undisputed record, that Hoyos has not met his burden of showing that he was not fired for good cause and of showing that his dismissal was the result of gender discrimination.  That conclusion suffices to uphold summary judgment on all of Hoyos's Puerto Rico law claims.  Hoyos has waived his ERISA claim on appeal.  See United States v. Zannino, 895 F.2d 1, 17 (1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Hoyos was employed by Telecorp from March 22, 1999 to October 11, 2003.  He was on notice of Telecorp's detailed anti-harassment and anti-discrimination policy.  Hoyos was promoted to Director of Telecorp's sales organization on January 1, 2003. During his years of employment, Hoyos received excellent evaluations, merit increases, bonuses, and prizes.

On April 4, 2003, Hoyos attended a business conference at the Inter-Continental Hotel in Isla Verde, Puerto Rico.  After the conference, Hoyos suggested to a group of employees that they go next door to the San Juan Hotel for drinks.  Nancy Alomar, who reported directly to Hoyos, joined Hoyos for drinks.  At close to midnight, Hoyos walked Alomar to her car in the back of the parking lot of the Intercontinental.  Alomar then gave Hoyos a ride to his own car.

Shortly thereafter, Alomar filed an internal company complaint alleging that Hoyos had sexually harassed her.  Alomar initially approached Human Resources Manager Pontón to complain about Hoyos's behavior.  As recounted by Pontón, Alomar described the incident as follows.  After Hoyos had walked Alomar to her car, Hoyos got into her car without her having invited him to do so. Alomar then drove Hoyos to his car.  Hoyos told her to give him a kiss, and then he grabbed her shoulders with both hands, trying three times to kiss her.  Alomar moved her face to avoid being kissed on the mouth, and Hoyos's kiss landed on her cheek.  She

-11-

said she protested, asking Hoyos what he was doing and saying that he was her boss and that he should let her go. Alomar was asked to keep the complaint and investigation confidential. Hoyos was notified of the complaint. He denied the charges but admitted that he had given Alomar a goodnight kiss on the cheek. The company investigated the charges; the results were inconclusive.

Before the incident that precipitated the sexual harassment complaint, Hoyos had recommended that Alomar be laid off. The decision about whether she would be fired was made in May, after Alomar had filed her complaint. Alomar was not laid off.

In May 2003, on Hoyos's recommendation, Telecorp restructured the corporate sales area for business reasons. One benefit of the reorganization, in light of the sexual harassment allegation, was that Alomar no longer reported to Hoyos; instead, she reported to Luis Cruzado, the corporate sales manager. Raúl Burgos, then-Vice President and General Manager and Hoyos's direct supervisor, stated that Telecorp was hopeful that middle-management could provide an adequate "buffer" between Hoyos and Alomar to allow them both to work productively.

The company had made a conscious decision to separate Alomar and Hoyos and to minimize the contact between them. With that in mind, Burgos and Pontón verbally instructed Hoyos to stay away from a Telecorp marketing booth at an upcoming July industry

convention because Alomar would be present in the booth. Hoyos was given specific instructions not to be present in the exhibition area where Alomar would be located. Alomar was similarly instructed to avoid Hoyos. Both complied with the instruction.

Burgos stated that from that point forward, there was coordination of attendance at industry conferences and conventions such that Hoyos and Alomar would alternate days at Telecorp's booth; as Burgos put it: "[I]t was agreed between all three parties, the company, Ms. Alomar, and Mr. Hoyos, that this will be the days that one will be at the booth, and the other one would not be present. That was the agreement. That was a direct order."

In August, Cruzado, to whom Alomar reported, resigned for unrelated reasons. In order to keep Hoyos and Alomar separated, the company told Hoyos to funnel all business communications with Alomar through Pontón.

In September 2003, Telecorp restructured its sales organization. The reorganization had grown out of Telecorp's merger with AT&T Wireless and had been under consideration for some time. After Alomar's complaint, the company expedited implementation of the reorganization plan. As part of this reorganization, Hoyos's title and responsibilities changed. Previously, he had been the director of Telecorp's entire sales organization. After the reorganization, the sales organization was split into three channels, each with its own director. Hoyos

became the director of alternative distribution channels and also was given responsibility for developing two new business channels. Hoyos suffered no loss of salary or stock options as a result of the reorganization, and he had a likelihood of earning more money. After the reorganization, Alomar reported to José Detres, who was the new Director of the Corporate Channel.

In October 2003, Telecorp participated in a Sales and Marketing Executive (SME) convention. Hoyos says he was not specifically instructed to stay away from Telecorp's marketing booth at the SME convention. He does admit that he was given such specific instructions as to the July trade show. On October 2, Hoyos visited Telecorp's booth at the SME convention, where Alomar was working. Alomar contacted Pontón to complain; Pontón called Burgos and told him about the complaint. Burgos met with Hoyos. Hoyos admitted that he had stopped by the booth. He said that he had done so because he wanted to visit the people working at the booth.

After learning of Alomar's complaint about the SME convention, corporate counsel Jeanne Habib met with Alomar in person to confirm that Hoyos had visited her at the Telecorp booth. Alomar said that she was upset that Hoyos had been there, contrary to the company's instructions to them both, and that he had stared at her in an intimidating fashion. Habib observed that Alomar was visibly and physically upset, and later stated that Alomar had

-14-

appeared "visibly shaken by the event[]."  Habib also interviewed another Telecorp manager, Wency Baerga, the Director of Retail Sales, who had visited the booth with Hoyos.  Baerga said Hoyos had "insisted" on going to the booth.  Habib then called Hoyos to confirm that he had visited the Telecorp booth at the SME convention.

On October 3, Alomar sent, by messenger, a letter to Pontón.  Burgos and Habib were copied on the letter.  The letter detailed the problems that Alomar had had with Hoyos and expressed her feelings that she had suffered both personally and professionally as a result of Hoyos's behavior towards her.  She specifically noted the SME convention incident, stating that when Hoyos visited the booth, he "stayed close to [her] with the clear intention of exerting emotional pressure on [her] performance and of continuing to intimidate [her] in [her] vulnerable position."  The letter also indicated Alomar's displeasure with the actions taken by Telecorp in response to her complaints.  It concluded by noting the legal alternatives available to Alomar and by requesting a written response from Telecorp explaining how it planned to ensure that she would no longer have to be in contact with Hoyos.

After receiving Alomar's letter, Burgos contacted corporate headquarters to discuss the situation.  Burgos also talked with Habib, who was aware of Alomar's complaint.

Thereafter, Burgos decided to terminate Hoyos's employment for "[v]iolation of a direct order." Burgos's superior, Jordan Roderick, supported the decision. Roderick did so because, as he had earlier stated, Hoyos was a management-level employee of the company who had created a situation of vulnerability for both himself and the company, and who had exercised bad judgment.

Hoyos disputes that he ever "agreed" to refrain from contact with Alomar or that he was ever instructed to stay away from Alomar at industry conventions other than the July convention. This is contrary to the testimony of company witnesses. These denials, Hoyos argues, create a dispute of material fact about whether he violated instructions issued by his superiors, which makes summary judgment inappropriate in this case.[5]

That argument fails. The district court correctly concluded that Hoyos had created no genuine issue of material fact as to whether the company had good cause for the reorganization in September of 2003 or for terminating his employment. Even if Hoyos was never given specific instructions to stay away from Alomar, and even if he never agreed to such an arrangement, summary judgment was appropriate.

---

[5]     Hoyos frames his argument in terms of the law governing employment discrimination claims under Title VII of the Civil Rights Act of 1964. Because he raises no Title VII claim, we reframe his argument in terms of the law governing Law 80 and Law 100 claims.

-16-

It was clear, both objectively and to Hoyos, that Telecorp intended to separate Hoyos and Alomar. Hoyos concedes that he was aware of this. He acknowledges that he was "convinced" not to approach Alomar at the July convention, that he was informed that part of the reason for the restructuring of the sales department was the "situation" with Alomar, and that he was aware that Alomar was no longer to report to him. Hoyos voiced his opposition to the actions taken by the company to separate him from Alomar, and he concedes that he was told that if he did not agree to them, he would be discharged or forced to resign. The argument that Telecorp could not fire Hoyos, a senior executive, unless it had expressly told him not to approach Alomar at the SME convention cannot be taken seriously. Hoyos was not a child requiring explicit instructions to stay away from Alomar on specific occasions.

Moreover, there is no evidence whatsoever that in Telecorp's view it had not conveyed to Hoyos that he was not to interact with Alomar. From the Company's perspective, then, when Hoyos approached Alomar at the SME convention, he was in violation of a direct order. See Rivera-Garcia v. Sistema Universitario Ana G. Mendez, 442 F.3d 3, 7 (1st Cir. 2006) (affirming summary judgment against an employment termination claim where the employer defended on the basis that the employee had engaged in sexual harassment and the employer had investigated and concluded that the

sexual harassment had occurred, and noting that "even if there had been mistakes as to [the investigation] procedure, . . . there [was] absolutely no evidence that any errors were motivated by discrimination"). This perceived violation suffices to establish that Telecorp did not terminate Hoyos on a whim, but rather for a sensible business-related reason. See Alvarez-Fonseca, 152 F.3d at 28 (quoting P.R. Laws Ann. tit. 29, § 185b).

Hoyos argues that summary judgment for Telecorp still was improper because the reasons offered for restructuring the sales department and terminating Hoyos's employment were pretextual.[6] He focuses his argument on three sub-themes: (1) there was no basis for Alomar's initial sexual harassment allegation; (2) Hoyos was otherwise an exemplary employee, while Alomar was not; and (3) there is no evidence that Hoyos ever "agreed" to stay away from Alomar. As the district court correctly held, none of these sub-themes is material.

As to the reorganization, Hoyos has introduced no evidence that the reorganization was a sham or was intended to target him because of his gender. Hoyos admitted in his deposition: "[T]hey decided, based on the situation with Nancy Alomar, that they needed to protect the company, and they

_____

[6] Hoyos also argues that "Telecorp's alleged non-discriminatory reasons [for terminating Hoyos's employment] were vague and general at best . . . and did not place . . . Hoyos in any position to understand what they [were]." Such an argument cannot be taken seriously.

restructured and they just put me aside."  Even if there were evidence that Alomar's complaint was the sole motivation for the reorganization (and there is none), it is still true that separating a low-level employee from a supervisor she has accused of sexual harassment is a legitimate business-related action.

Hoyos also has failed to rebut Telecorp's good cause and non-discriminatory reason for terminating his employment: that he approached Alomar when he was aware that Telecorp had sought to isolate her from him.  Hoyos was aware that even though he disagreed with the company's decision to separate him from Alomar, he was required to abide by it or risk termination.  That is the issue, not whether he "agreed" to stay away from Alomar or in fact had engaged in sexual harassment, or whether his performance was otherwise laudable.  Nothing in the record supports an inference that the reason for termination of Hoyos's employment was anything other than his own conduct.[7]

As a result, Telecorp was entitled to summary judgment on all of Hoyos's claims.  Entry of judgment for Telecorp is <u>affirmed</u>. Costs are awarded to Telecorp.

---

[7] Hoyos states that Alomar also violated a superior's instruction when she spoke with other Telecorp employees about her sexual harassment complaint against Hoyos.  He argues that the fact that she was not disciplined for her violation while he was is evidence of disparate treatment on the basis of sex.  The two violations are not remotely comparable, and the company's handling them differently does not evidence discrimination.