Jesus H. MARRERO, et al., Plaintiffs

v.

**SCHINDLER ELEVATOR CORP., Defendant.**

Civil No. 06–1569 (JP).

United States District Court, D. Puerto Rico.

June 11, 2007.

Aníbal Escanellas–Rivera, Esq., Escanellas & Juan, San Juan, PR, for Plaintiffs.

Francisco Chévere, Esq., Rica López-de Alós, Esq., McConnell Valdés, San Juan, PR, for Defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

The Court has before it the defendant's motion for summary judgment, and the plaintiffs' opposition. This action is brought under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and for alleged violations of Puerto Rico law. Plaintiff Jesus Marrero claims the defendant discriminated against him on the basis of age in violation of the ADEA, Title VII, Puerto Rico Law 100 of June 30, 1959, and retaliated against him in violation of the ADEA and Law 115 of December 20, 1961. His wife and conjugal partnership claim the defendant violated their rights under Article 1802 of the Puerto Rico Civil Code. The defendant moves for summary judgment on the ADEA, Law 100, Law 115, and Article 1802 claims, and moves for dismissal of the Title VII claims for failure to state a claim. The Court **GRANTS** the defendant's motion (**No. 18**).

## I. STANDARD

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See, Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

In a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must

affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See, Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman,* 985 F.2d at 1116.

## II. MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The parties stipulated to the following facts at the Initial Scheduling Conference held on November 16, 2006.

1. Plaintiffs Jesús H. Marrero and María M. Concepción are citizens of the Commonwealth of Puerto Rico.

2. Schindler Corp. of Puerto Rico is authorized to and currently does business in the Commonwealth of Puerto Rico, and has continuously employed an excess of twenty people at all relevant times.

3. At the time the instant complaint was filed Marrero was fifty-six years old.

4. Marrero began working for Schindler on January 23, 1989.

5. May 18, 2005 was the last day Marrero showed up for work as a construction mechanic for Schindler.

6. Marrero is still a Schindler employee. He has not been dismissed or fired by Schindler.

7. Marrero has not returned to work at Schindler.

8. On June 28, 2005, Marrero filed a charge of discrimination before the Anti-discrimination Unit of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico, and before the Equal Employment Opportunity Commission.

9. Marrero's immediate supervisor, Arnaldo Torres, is forty-seven years old. Schindler's District Manager, Edward Dion, is seventy-two years old. They are both over the protected age.

10. On September 25, 2006, the Administrator of the State Insurance Fund issued a decision regarding Marrero's claim 05–15–07341–6, ruling that Marrero's alleged mental condition was not work-related. The decision was notified on October 17, 2006.

11. The September 25, 2006 State Insurance Fund decision was the result of a May 15, 2006 Special Medical Report issued after the agency's psychiatrists had examined and treated Marrero.

The following material facts are not in genuine issue or dispute. They were listed in the defendant's statement of facts, were supported by record evidence, and were not contested by the plaintiffs. *See, Cosme-Rosado v. Serrano-Rodríguez,* 360 F.3d 42, 44–45 (1st Cir.2004) (Because the plaintiffs failed to provide a supported factual basis for their claims against the defendants, the court properly deemed admitted the defendants' supported facts).

1. Schindler is dedicated to the installation of elevators and escalators and provides service and maintenance to them.

2. Plaintiff Jesús H. Marrero ("Marrero") is a Schindler employee who occupies the position of construction mechanic.

3. Marrero was born on August 23, 1950.

4. As of May 18, 2005, Schindler employed twenty-two mechanics. Of these twenty-two mechanics, twelve were over forty years old. Of these twelve mechanics, four were older than Marrero; one was fifty-

six years old, and the other three were over sixty years old.

5. Arnaldo Torres, the Construction Superintendent at Schindler, is forty-seven years old. He is Marrero's immediate supervisor.

6. Domingo W. Vargas, Schindler's Modernization and Construction Field Superintendent, is sixty-two years old.

7. Edward Dion, Schindler's District Manager and the top managerial employee, is seventy-two years old.

8. At all relevant times Marrero has been a member of Unión Los Gladiadores, Inc. ("Union"), which has represented construction employees at Schindler since the mid 1970's.

9. The terms and conditions of employment of the Union employees are set forth in the Collective Bargaining Agreement ("CBA") between Schindler and the Union, and Marrero's salary and benefits are negotiated between the Union and Schindler.

10. The CBA does not apply outside of the Commonwealth of Puerto Rico.

11. The CBA provides for a grievance procedure to file complaints regarding any controversy, dispute, conflict or any discrepancy or difference in interpretation between the Union and the Company which involves the CBA and arises regarding disciplinary measures, warning letters, sanction, or the suspension or dismissal of one or more employees.

12. As a construction mechanic, Marrero is responsible for the installation of elevators and escalators and should be able to interpret electrical diagrams and assembling plans.

13. Marrero started working for Schindler on or about January 23, 1989.

14. Marrero is still a Schindler employee.

15. Schindler has not dismissed or fired Marrero.

16. Schindler has not changed Marrero's working conditions, compensation, or terms of employment.

17. On or about February 2, 2005, while working on the San Miguel Plaza project, Torres conducted an inspection of the elevator rails that Marrero had installed and found that the rails were not properly aligned, even though Marrero alleged that the rails were properly installed.

18. The failure to correctly align an elevator's rails creates a serious threat to the proper operation of the elevator, and is also a threat to the security and welfare of its passengers.

19. Schindler might suspend or even dismiss a mechanic responsible for such a mistake.

20. A visual inspection of the elevator shaft and pit revealed that the rails were not anchored properly. The Union's delegate, Henry Silva, and Schindler agreed that Marrero would re-align the elevators after working hours, without pay, in exchange for Schindler not taking disciplinary actions against him.

21. Neither Marrero nor the Union filed a grievance regarding the events of February 2, 2005.

22. On May 18, 2005, Marrero was injured while working on an elevator and sought treatment from the Corporation of the State Insurance Fund of Puerto Rico ("SIF").

23. On May 20, 2005, the SIF treated Marrero for a back spasm and ordered Marrero to receive treatment while on leave.

24. On June 15, 2005, Marrero was authorized to return to work by the SIF while he continued treatment.

25. On June 17, 2005, Marrero returned to work at a project at the Puerto Rico Convention Center. On that day, Torres asked Marrero to return to the Federico Costa project to finish the wielding of the elevator brackets he had previously worked on.

26. Marrero did not comply with the request and he had an argument with Torres over the telephone, during which Marrero became agitated.

27. Marrero never reported to the Federico Costa project as requested by Torres.

28. On June 17, 2005, Marrero claimed to be affected by a work related mental affliction and sought medical treatment from the SIF, which ordered treatment while on leave.

29. On June 17, 2005, the SIF restricted Marrero from working and put him on leave status.

30. On May 10, 2006, the SIF discharged Marrero from medical treatment for the alleged mental condition.

31. The SIF determined that Marrero's mental condition was not work related.

32. The SIF Decision of September 25, 2006 was issued after Marrero was examined by several SIF's psychiatrists. The SIF's psychiatrists issued a Special Medical Report dated May 15, 2006 in which they determined that Marrero's mental condition was not work related.

33. Marrero submitted a medical certificate to Schindler from Dr. Luis C. Rojas ("Dr.Rojas"), dated May 12, 2006, stating that Marrero could not show up to work until December 31, 2006.

34. This medical certificate was issued because Marrero requested it from Dr. Rojas, and Dr. Rojas agreed to it.

35. After May 18, 2005, except for a partial workday on June 17, 2005, Marrero has not returned to work at Schindler.

36. Marrero has not made any efforts to return to work, and has not requested that Schindler reinstate him.

37. According to the terms of the CBA, an employee who is on leave for more than a year loses his seniority status, and thus the right to be reinstated to his position.

38. Marrero alleges that Torres is the only person at Schindler who has harassed him.

39. Torres has an aggressive style of management and has issued many reprimands and warnings to Schindler employees, regardless of their age.

40. Ever since Torres arrived at Schindler, he is the supervisor who has applied most discipline and has imparted more warnings to the employees, more so than previous supervisors.

41. Torres' style, including the frequent warnings, has been applied equally to everyone, referring to the construction mechanics, regardless of who they are or their age.

42. When Torres has faced the need to issue warnings and apply discipline to construction employees, he has done it equally to all employees.

43. Employees under Torres' supervision felt he has "persecuted" and "harassed" all employees with regards to their performance, regardless of their age.

44. Víctor Negrón–Pagán ("Negrón") is a thirty-nine year old (he was born on August 27, 1967) former employee of Schindler, who started working for Schindler on October 12, 1987.

45. Negrón felt harassed and persecuted by Torres while an employee, and indicated that Torres issued warnings, and dumped on "everyone equally," regardless of their age.

46. Negrón was considered by Torres to be an "old" or "older" employee, regardless of his age, because he worked for Schindler for nineteen years.

47. Torres issued Negrón various verbal and written warnings.

48. Angel Miguel Alvarez–Géigel is a sixty-one year old construction mechanic (he was born on October 1, 1945) who has worked for Schindler for twenty-five years and is supervised by Torres.

49. During the time Torres supervised Alvarez, for around the past five years, he has never had any problems with Torres.

50. Alvarez has received warnings from Torres, regarding problems with particular jobs performed by him.

51. Alvarez has personally witnessed many verbal warnings from Torres directed to several construction employees during the meetings that are held the second Thursday of every month and while working at project sites.

52. Alvarez has witnessed Torres applying verbal warnings regarding the working schedule to at least half the Union membership, including Henry Silva, who is a "young" employee.

53. According to Alvarez, these verbal warnings are given by Torres to all employees, regardless of their age or other considerations.

54. Alvarez never heard Torres make any kind of discriminatory comments about Marrero.

55. Except for the alleged incident at Puerto Rico Convention Center, Marrero never told Alvarez that he had any problem or situation with Torres.

56. Schindler employees who are assigned to work outside of the Puerto Rico Metropolitan Area are paid a "premium" per hour that can be as high as $95.00 per day and can also be paid a *per diem* and be reimbursed for transportation expenses.

57. During 2004 and 2005, the majority of projects to which Torres assigned Marrero were jobs that included "premium" payments. In 2005, out of the five projects in which Marrero worked, four entailed a "premium" payment since they were jobs outside of the Metropolitan Area–Ponce (two projects), San Lorenzo and Comerío. In Ponce, Marrero worked a total of 1,578 hours with a 10 percent premium on one project and 1,219 hours with a 10 percent premium on another.

58. In 2004, Torres asked Marrero if he was willing to work on a project in St. Thomas, Virgin Islands, with all expenses paid by the Company, including a $75.00–a–day meal supplement, hotel, and a rented car. Marrero accepted the assignment and asked Torres for permission to have his wife accompany him, and Torres granted the request.

59. Marrero admitted none of his co-workers have been dismissed because of their age.

60. According to Schindler's records, from September 2004 through September 2005, out of all of the company's mechanics, Marrero needed the most excess time to complete the projects assigned to him.

61. According to Schindler's records, from September 2004 through September 2005, Marrero's average completion time for a job was 177.9 percent of the estimated time to complete a job. Other mechanics' average completion time was 71.7 percent and 94.0 percent of the estimated time to complete the projects assigned to them.

62. On March 10, 2005, Torres issued Marrero a written warning of poor performance in specific areas and requesting improvement in those areas. The warning indicated Marrero had a general lack of knowledge in analyzing and interpreting elevator layouts, defective shaft evaluation and installation of elevator rails, all of which were part of Marrero's responsibilities as a construction mechanic under the CBA. The warning also indicated that Torres would monitor Marrero's performance and he would meet with Marrero every two weeks to discuss his progress.

63. Neither Marrero nor the Union filed a grievance regarding the March 10, 2005 written warning to Marrero.

64. On November 27, 2002, Vargas issued Marrero a written warning for not following instructions in accounting for BDP hours on Schindler's projects.

65. Nobody at Schindler told Marrero that his poor performance was the result of being old.

66. On June 28, 2005, Marrero filed a charge of discrimination before the Anti–Discrimination Unit of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico ("ADU") and the Equal Employment Opportunity Commission ("EEOC").

67. Marrero did not allege retaliation in his charge before the ADU.

68. Marrero admitted that Schindler has not retaliated against him for filing a charge of discrimination.

69. At all times, Schindler has had a policy which prohibits harassment on the basis of age, among others.

## III. ANALYSIS

### A. Age Discrimination Claims

■■■ Under the ADEA, 29 U.S.C. §§ 621 et seq., "it is unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate (1) he is at least forty years old, (2) his job performance met the employer's legitimate expectations, (3) the

employer subjected him to an adverse employment action, and (4) the employer had a continuing need for the services provided by the position. *Hoffman v. Applicators Sales and Service, Inc.,* 439 F.3d 9, 17 (1st Cir.2006). The *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. *Id.* at 17. The burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." *Id.* at 17. If the employer meets this burden, then the plaintiff must demonstrate that the employer's articulated reason is mere pretext for discriminatory animus. *Id.* at 17.

■ The defendant is entitled to summary judgment on the ADEA discrimination claim, because there is no genuine issue as to whether Marrero was subjected to an adverse employment action. Marrero claims the defendant subjected him to an adverse employment action, by subjecting him to a hostile work environment. The First Circuit has recognized hostile work environment claims under the ADEA. *See, Rivera–Rodríguez v. Frito Lay Snacks Caribbean, a Division of Pepsico P.R.,* 265 F.3d 15, 24 (1st Cir.2001). To prove a hostile work environment claim, a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct "is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Id.* at 24. The plaintiff must demonstrate that the conduct at issue was "so severe or pervasive that it altered the terms of employment." *Carmona–Rivera v. P.R.,* 464 F.3d 14, 19 (1st Cir.2006). The Court must evaluate the record, considering "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interfered with an employee's work performance." *Id.* at 19. The First Circuit held that "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." *Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir.2005).

■ Marrero's hostile work environment claim fails, because he did not meet his burden to produce evidence of age-based discriminatory conduct sufficiently severe or pervasive to permit a reasonable jury to find a hostile work environment. Marrero bases his hostile work environment claim on comments Torres made regarding his age. He declared in his affidavit that Torres would refer to him as "viejo," "viejito," "viejo pendejo," and other names. Marrero declared that such behavior was "constant" and "on a daily basis." Even accepting as true that the declared frequency of the conduct, the alleged conduct is too mild to form the basis of a hostile work environment claim. There is no indication the conduct was, either objectively or subjectively, physically threatening, humiliating, nor that it interfered with Marrero's work performance. Because there is no genuine issue as to the presence of a hostile work environment, the defendant is entitled to summary judgment on Marrero's ADEA claim arising out of an alleged hostile work environment.

■ Under Puerto Rico's Law 100, a plaintiff has the burden of demonstrating that he was actually or constructively discharged, and alleging that the decision was discriminatory. *Velazquez–Fernandez v. NCE Foods, Inc.,* 476 F.3d 6, 11 (1st Cir. 2007). If the plaintiff meets this requirement, the burden of persuasion shifts to the employer to show, by a preponderance of the evidence, that it had "good cause" for its action. *Id.* at 11. If the employer shows good cause, then, as under the

ADEA, the burden of persuasion returns to the employee to show "that the employer's decision was motivated by age discrimination." *Id.* at 11.

■ The defendant is entitled to summary judgment on Marrero's Law 100 claim, because there is no genuine issue as to whether he was actually or constructively discharged. To prove constructive discharge a plaintiff must show that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign. *De La Vega v. San Juan Star*, 377 F.3d 111, 117 (1st Cir.2004), *Lee–Crespo v. Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir.2003). The First Circuit has emphasized, "It is not enough that the plaintiff suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world." *De La Vega*, 377 F.3d at 117.

Here the defendant is entitled to summary judgment on Marrero's Law 100 claim, because there is no genuine issue as to whether Marrero was constructively discharged. Marrero has not demonstrated that a reasonable person in his shoes would have felt compelled to resign, and the record shows that in fact he is still an employee of Schindler.

### B. Law 115 and ADEA Retaliation Claims

■ The defendant is also entitled to summary judgment on Marrero's retaliation claims. Marrero alleges in his complaint that the defendant retaliated against him for filing age discrimination charges with the Puerto Rico Department of Labor Anti–Discrimination Unit ("ADU") and with the Equal Employment Opportunity Commission ("EEOC"). Retaliation is actionable under the ADEA. *See,* 29 U.S.C. § 623(d). Law 115 provides that no employer may discriminate against an em-

ployee for offering or attempting to offer "any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico," except where the disclosure is defamatory or of privileged information. P.R. Laws Ann. tit. 29 § 194a (a) (2003).

The defendant is entitled to summary judgment on the retaliation claims, because there is no evidence on the record that the defendant discriminated against Marrero for filing his age discrimination charges on June 28, 2005. In fact, the uncontested facts show that Marrero has not returned to work since he filed the charges, and he testified in his deposition that the defendant has not retaliated against him for filing the charges.

### C. Title VII

■ The defendant moves the Court to dismiss Marrero's Title VII claim for failure to state a claim. Marrero alleges the defendant discriminated against him only on the basis of his age. Title VII of the Civil Rights act of 1964 bars only discrimination on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e–2 (a). Accordingly, the Court will enter judgment dismissing the Title VII claim with prejudice.

### D. Article 1802

■ Relatives of a victim of employment discrimination have a cause of action for damages under Article 1802 of the Puerto Rico Civil Code. *See, Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1, 10 (1994). Marrero's wife's and conjugal partnership's Article 1802 causes of action is contingent upon Marrero's underlying discrimination in employment claims. *See, Marcano–Rivera v. Pueblo Intern. Inc.*, 232 F.3d 245, 258 fn. 7 (1st Cir.2000). Because the Court will dismiss the discrimination claims with prejudice, the

Court will also dismiss the Article 1802 claims with prejudice.

## IV. CONCLUSION

The Court grants the defendant's motion for summary judgment, and will enter judgment dismissing the complaint with prejudice.

**IT IS SO ORDERED.**