Angel **REYES VEGA**, et al., Plaintiffs

v.

**PEPSI COLA PUERTO RICO DISTRIBUTING LLC, et al., Defendants.**

**Roberto Jimenez Alvarado, et al., Plaintiffs**

v.

**Pepsi Cola Puerto Rico Distributing LLC, et al., Defendants.**

Civil Nos. 03–1958 (JAG), 03–1959(JAG).

United States District Court, D. Puerto Rico.

May 19, 2005.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiffs.

Juan J. Casillas–Ayala, Pedro J. Manzano–Yates, Ada Nurie Pagan–Isona, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER[1]

GARCIA–GREGORY, District Judge.

On September 2, 2003, Angel Reyes Vega ("Reyes"), his wife, and the conjugal partnership constituted between them, and Roberto Jimenez Alvarado ("Jimenez"), his wife and their conjugal partnership (collectively "plaintiffs"), filed separate suits against Pepsi Cola Puerto Rico Distributing LLC ("Pepsi" or "defendant") alleging age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, retaliation pursuant to Title VII, 42 U.S.C. § 2000e–3(a), and supplemental state law claims (Docket No. 1). On November 29, 2004, Pepsi moved for summary judgment against Reyes' claims (Civ. No. 03–1958, Docket No. 17). On February 22, 2005, Pepsi moved for summary judgment against Jimenez's claims (Civ. No. 03–1959, Docket No. 26). Both plaintiffs have filed their oppositions (Civ. No. 03–1958, Docket Nos. 24, 25; Civ. No. 03–1959, Docket No. 35). For the reasons discussed below, the Court **GRANTS** Pepsi's motions for summary judgment.

## FACTUAL BACKGROUND

Pepsi is engaged in the production and distribution of Pepsi–Cola brand products and a variety of non-alcoholic beverages. The Seafarers of Puerto Rico ("SIU"), affiliated to the Seafarers International Union of North America, has been the exclusive representative of most of Pepsi's employees for the last five years, having gained that right by the National Labor Relations Board Certification No. 24 RC 6703. At all relevant times, plaintiffs were represented by the SIU.

In 1996, Pepsi began gradually implementing a marketing system known as "pre-sales." Through this system, a pre-salesman visits the customer, usually a supermarket, and discusses with a representative the quantities and types of products needed. Thereafter, the pre-salesman forwards the order to one of Pepsi's Customer Service Representatives.[2] The orders are compiled in a delivery list and on the next day Pepsi's trucks deliver the products ordered and collect sales proceeds. In 1997, through a Collective Bargaining Agreement ("CBA") between Pepsi and the SIU, the pre-salesmen were given additional merchandising duties. In 1999, Pepsi fully adopted the pre-sales method as its main marketing strategy. Under the terms of the current CBA, the 2002–2005 CBA, the supermarket pre-salesmen have been assigned all merchandising responsibilities. Pepsi has also assigned approximately forty merchandisers to assist the pre-salesmen, ordinarily in supermarkets where Pepsi, by agreement, has a privileged position.

Plaintiffs currently work for Pepsi as supermarket pre-salesmen. Reyes has been employed with Pepsi and has been a member of the SIU since 1961. Jimenez has been employed with Pepsi and has been a member of the SIU since 1979.[3] As supermarket pre-salesmen, plaintiffs' duties under the 2002–2005 CBA consist of (a) sales of Pepsi products and (2) merchandising. At all relevant times plaintiffs' salaries and commissions were established by the applicable CBA. Between

---

1. Because both of these cases arise from the same nucleus of operative facts and present identical issues of law, the Court will consolidate them for summary judgment purposes.

2. This process was at first done by telephone, but eventually Pepsi gave its pre-salesmen a hand held computer where the orders are entered.

3. Jimenez also worked for Pepsi from 1974 until 1975, when he joined the U.S. Army.

1992 and 1997, plaintiffs' salary was $210 per week and a $0.16 commission for each box sold. Between 1997 and 2001, their salary was raised to $240 weekly and their commissions reduced to $0.10 per box sold. Under the 2002–2005 CBA, Reyes' salary was reduced to $225 per week and Jimenez's to $212 per week. Their commissions were also reduced to $0.06 per box sold. All of these changes in salary were the result of negotiations between Pepsi and the SIU. Pepsi has applied the salary and commission structure to all its employees regardless of age.

As part of the bargaining process, Pepsi conducted a study to determine how it could reduce its operating costs and compete more effectively in the refreshment market and increase its market share. The study demonstrated that Pepsi's main competitor, Coca–Cola, had significantly lower labor costs. In an effort to maintain its competitive edge, Pepsi proposed, and the SIU agreed, to reduce the compensation of various occupational classification in the 2002–2005 CBA. Thus, the 2002–2005 CBA provides for the reduction in salaries and commissions for the pre-salesmen, among others. In order to mitigate the economic impact, Pepsi gave its pre-salesmen a $3,500 lump sum payment. The majority of the SIU members approved these measures.

The 2002–2005 CBA also provides that if a supermarket changed over to an electronic system for placing orders, that account could be removed from the pre-sales method. Once removed, the pre-salesman assigned to that supermarket would not receive commissions from those sales. Pepsi was granted the absolute right to establish and determine all sales routes and to reassign any pre-salesman to a different route. Furthermore, the pre-salesmen were required to perform all merchandising duties.

The 2002–2005 CBA provides for a grievance procedure to resolve controversies or conflicts arising from its terms. If the grievance cannot be resolved internally, then it is referred to arbitration. In 2000, Pepsi's pre-salesmen, including both plaintiffs here, filed a grievance alleging that Pepsi had breached the 1997–2001 CBA by requiring them to perform merchandising duties. The arbitrator held that no breach had occurred. The pre-salesmen did not seek judicial review of that award. On January 14, 2003, plaintiffs filed administrative charges before the Equal Employment Opportunity Commission ("EEOC") claiming discrimination under the 2002–2005 CBA. The EEOC dismissed their claims because they had not been timely filed.

## DISCUSSION

### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Ca-*

trett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."

*Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

B. *Pepsi's Motions for Summary Judgment*

1. *Age Discrimination*

Pepsi moves for summary judgment by arguing that plaintiffs' claims are time-barred because they failed to file their employment discrimination charge with the EEOC within the three-hundred-day period of limitations. In the alternative, Pepsi argues that plaintiffs have failed to demonstrate that age was the motivating factor behind the alleged adverse employment actions. Because the Court is convinced that plaintiffs' claims are completely devoid of merit, it will bypass discussion of the time-barred argument.

When a plaintiff, as here, lacks direct evidence of discrimination, Courts apply the Burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff must first establish a *prima facie* case of age discrimination by demonstrating that (1) he is within the protected class (over the age of forty); (2) that his job performance was satisfactory and met his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that the employer had a continuing need for the services the plaintiff had been rendering. *See Pueblo Int'l*, 229 F.3d at 53; *Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir. 1991); *Flamand v. American Int'l Group, Inc.*, 876 F.Supp. 356, 368 (D.P.R.1994).

Establishing a *prima facie* case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then

articulate a legitimate non-discriminatory reason for the adverse employment action. *See Mesnick*, 950 F.2d at 823. "This entails only a burden of *production*, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Id.* (*citing Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Medina–Munoz*, 896 F.2d at 9)(emphasis added). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata–Matos v. Reckitt & Coleman*, Inc., 277 F.3d 40, 45 (1st Cir.2002). To do so, plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive, age discrimination.'" *Mesnick*, 950 F.2d at 824 (*quoting Medina–Munoz*, 896 F.2d at 9).

Plaintiffs in this case have clearly established (1) that they are within the protected class and (2) that they met their employers legitimate expectations. To establish that they suffered an adverse employment action, both plaintiffs proffer that their salaries were reduced, that their biggest client, Grande supermarket, was removed from their client rosters, and that they were not assigned a merchandiser to help them load and unload the product, although one was requested several times. Plaintiffs, however, have failed to meet the fourth prong of the *prima facie* case; they failed to demonstrate that their age was a motivating factor or that younger individuals were treated differently.

■ First, the reduction in their salaries was the result of a negotiation between the employer and plaintiffs' duly recognized representative, the SIU. The Court cannot understand how a reduction in salary which results from labor negotiations between the employer and the employee's labor union, which is charged with safeguarding the employee's interests and that affects all employees and not just the plaintiff, can be regarded as a discriminatory act on the part of the employer. Moreover, the record shows that younger persons who also hold the position of presalesman, including those who plaintiffs argue are getting better treatment, are in fact receiving a lower salary than the plaintiffs. (*See* Civ. No. 03–1959, Docket No. 40 at 13). Plaintiffs cannot point to any facts that could link the reduction ·in salary to their age. Second, Pepsi has proffered that Grande supermarket was removed from plaintiffs' client roster because it is now placing orders via electronic means and is no longer part of the presales system. This act by Pepsi is authorized under the terms of the 2002–2005 CBA. Plaintiffs have not established that their age was a motivating factor in removing Grande from their client roster. Finally, plaintiffs have been unable to establish that Pepsi's failure to assign them a merchandiser is due to their age. Pepsi has proffered that merchandisers are only assigned to certain supermarkets and plaintiffs can present no evidence to establish that age is a factor considered in the decision in the assignment of merchandisers. Therefore, plaintiffs have failed to establish a *prima facie* case of age discrimination.

Even assuming *arguendo* that plaintiffs are able to establish a *prima facie* case of age discrimination, they are unable to re-

but Pepsi's proffered non-discriminatory reason. Pepsi argues that it took these measures in order to gain a competitive edge. By lowering certain costs, including labor costs, Pepsi could more effectively compete with its main rival, Coca–Cola. Thus, Pepsi entered negotiations with its employees' union in order to implement cost-cutting measures. The majority of SIU's members then voted for the approval of the 2002–2005 CBA.

The burden then shifts to plaintiffs to demonstrate that Pepsi's proffered reason is a mere pretext for discrimination. They fail, however, to even hint at any evidence that could reveal pretext. Therefore, plaintiffs have failed to meet their burden and Pepsi is entitled to summary judgment on their age discrimination claims.

### 2. *Hostile Work Environment*

■■■ Although plaintiffs do not directly argue that they were subjected to a hostile work environment, and Pepsi does not address the issue, it seems that in their oppositions to summary judgment plaintiffs are attempting to establish facts that could support such a conclusion. To successfully establish that he was subjected to an age-based hostile work environment, a plaintiff must prove

(1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome [ageist] harassment; (3) that the harassment was based upon [age]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that

some basis for employer liability has been established.

*O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir.2001) (citations omitted). "Hostile-work-environment claims were first recognized in the sex-discrimination context, but have since been recognized for members of any protected class." *Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 24 (1st Cir.2001)(*citing Lattimore v. Polaroid Corp.,* 99 F.3d 456, 463 (1st Cir.1996)). "When assessing whether a workplace is a hostile environment, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.* (*citing Landrau–Romero v. Banco Popular De Puerto Rico,* 212 F.3d 607, 613 (1st Cir.2000)). A mere offensive utterance is insufficient to create a hostile environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Moreover, " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes 'in the terms and conditions of employment.' " *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal citation omitted).

■■ Plaintiffs here state that they were constantly subjected to harassment by their supervisors due to their age. Among the harassing remarks, plaintiffs allege that they were called "old man"; were told that, because of their age, they were unable to bend and squat in order to clean the racks in the supermarkets; were asked when they would retire and leave the company; were told that they earned too much for doing nothing; were told to retire and leave because they were old and their supervisors were tired of them; were asked

how much they had saved for retirement. Plaintiffs, however, merely state that these comments were made and fail to show that the comments created such a hostile environment that would force them to resign from their employment. Moreover, there is no evidence to demonstrate a change in the terms and conditions of their employment. *See Id.* Therefore, insofar as plaintiffs are hinting at a hostile work environment, their claim fails.

### 3. *Retaliation*

■ Under *McDonnell Douglas,* plaintiffs bear the initial burden of establishing a *prima facie* case of Title VII discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The specifications of the *prima facie* proof vary depending on the nature of the discrimination claim. *See Id.* at 802 n. 13. With respect to retaliation claims, the *prima facie* model requires plaintiffs to show that: 1) they engaged in a protected conduct; 2) they suffered an adverse employment action; and 3) there is a causal connection between the protected conduct and the adverse employment action. *See Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998).

The first prong of the *prima facie* case for retaliation is met; plaintiffs filed a discrimination claim against their employer with the EEOC. However, there is no evidence that Pepsi took any retaliatory measures against the plaintiffs for that filing. Plaintiffs merely allege that the conduct they complained of continued after their EEOC filing. This is simply insufficient to establish a *prima facie* case of retaliation and their Title VII claims must also be dismissed.

### 4. *State Law Claims*

Since no federal claims to ground jurisdiction remain in this case, plaintiffs' supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Pepsi's motions for summary judgment and dismisses plaintiffs' federal claims **with prejudice.** Supplemental state law claims are dismissed **without prejudice.** Judgment shall enter accordingly.

IT IS SO ORDERED.