Francisco MATIAS–CARDONA,
et al., Plaintiffs

v.

VERIZON WIRELESS PUERTO
RICO, INC., Defendants.

Civil No. 06–2095(JAG).

United States District Court,
D. Puerto Rico.

March 12, 2009.

Anibal Escanellas–Rivera, Escanellas & Juan, Jose E. Andino–Delgado, Jose E. Andino Law Office, San Juan, PR, for Plaintiffs.

Jorge A. Antongiorgi, Luis Fernando Llach–Zuniga, Miguel A. Rivera–Arce, McConnell Valdes, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Verizon Wireless Puerto Rico, Inc., Verizon Information Services Puerto Rico Inc., and Axesa Servicios de Información, S. en C.'s ("Axesa") (collectively "Defendants") motion for summary judgment. (Docket No. 52). The motion was referred to a Magistrate Judge, (Docket No. 90), who recommended that this Court grant Defendants' request for summary judgment. (Docket No. 112). For the reasons set forth below, the Court **ADOPTS** the Magistrate Judge's Recommendation and **GRANTS** Defendants' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court will recount the relevant background facts, which were thoroughly described by the Magistrate Judge in his Report and Recommendation. (Docket No. 112).[1] This case arises out of Plaintiff Francisco Matías Cardona's ("Matías") employment with Axesa, formerly Verizon Information Services Puerto Rico, Inc. (Docket No. 45, ¶ 1, 3). Axesa publishes the Yellow Pages book and other online and print directories. (*Id.*, ¶ 2). Axesa sells advertising space in its directories through its sales representatives during sales campaigns referred to in the company as "sales canvasses." (*Id.*, ¶ 4). The canvasses include the Metro canvass, targeting customers in the San Juan metropolitan area, and the Isla canvass, targeting clients in Puerto Rico outside the San Juan area. (*Id.*). Its sales representatives, who engage in both telephone and direct in-person sales, have sales targets in either a geographical area or in a specific industry. (*Id.*). The Premise Division, that portion of Axesa's sales force which conducts sales by visiting clients in the field, is divided into three sales channels: Major Account, Industry Specific, and Premise Regular. (*Id.*, ¶¶ 7, 8). Major Account representatives handle Axesa's largest accounts and primarily cater to large corporate clients. (*Id.*, ¶ 8). Industry Specific representatives specialize in clients of specific industries, such as the medical industry or automotive industry. (*Id.*). Premise Regular representatives visit all types of clients during canvasses, and comprise the bulk of the Premise Division's sales force. (*Id.*). Axesa measures the performance of its sales representatives by their ability to reach certain sales objectives associated with the sales canvasses. (*Id.*, ¶ 9; Docket No. 66, ¶ 9). Axesa's sales representatives are compensated by both a fixed base salary and commissions—which are dependent on the representative's ability to meet the sales objectives established by the company for each sales canvass—and are paid according to those sales results. (Docket No. 45, ¶ 10).

Matías, who was born on January 13, 1961, began working with Axesa's predecessor in 1997 as a sales supervisor. (*Id.*, ¶ 13, 143). Matías was then transferred to

---

1. The factual background is the same one mentioned in the Report and Recommenda-   tion.

the position of Sales Support Coordinator. (*Id.*, ¶ 24; Docket No. 66, ¶ 24). Effective March 1, 2000, Matías was assigned to the position of Industry Specific sales representative, responsible for handling medical industry clientele. (Docket No. 45, ¶¶ 26, 33; Docket No. 66, ¶ 26). He held this position through the Isla 2005 sales canvass. (Docket No. 45, ¶¶ 36). Matías was out of work on short-term disability leave from September 19, 2005, through March 17, 2006, and did not participate in the Metro 2006 sales canvass which took place during this time. (*Id.*, ¶ 42). When he returned from disability leave, he was transferred to the position of Premise sales representative. (*Id.*, ¶ 45; Docket No. 66, ¶ 45). In his positions as both Industry Specific sales representative and Premise sales representative, his major responsibilities and duties included: (1) maintaining the closings-per-day objective for each sales canvass; (2) performing the required number of contacts or visits each day; (3) conducting personal visits to assigned customers in accordance with procedures established by the Sales Director or Sales Manager; (4) planning each account in order to assure maximum revenue potential; (5) presenting recommended programs specific to each customer's needs and closing the corresponding sale; (6) informing clients about new products and special offers; (7) submitting all documents necessary to complete contracts with clients and maintaining all required sales reports; (8) handling "action forms" promptly and following up in order to solve customer complaints in a timely manner; (9) attending meetings and training sessions as required; (10) maintaining expected accuracy levels and controlling "rejects;"[2] (11) correcting any rejected accounts; (12) promptly handling complaints and adjustments from clients. (Docket Nos. 45, ¶ 15, 16; 66, ¶ 15, 16).

An evaluation from the August 1997–August 1998 period, (hereinafter referred to as the "Evaluation from August 1997 to August 1998"), notes that Matías experienced difficulties with his job knowledge, quality of work, reliability, and interpersonal relationships with coworkers. (Docket Nos. 45, ¶ 23; 57–8). The Evaluation from August 1997 to August 1998 reflected his supervisor's perception that the quality of Matías's work did not comply with required standards, that Matías's inter-personal relationships with coworkers needed improvement, and that Matías's overall results were "somewhat less than expected."[3] (Docket 45, ¶ 23; 57–3, p. 42–49). Although an evaluation covering the year 1999, (hereinafter referred to as the "Evaluation covering the year 1999"), included some positive comments, it also reflected his supervisor's perception that he needed improvement in the areas of work quality, interaction with coworkers, timeliness, and using "common sense at a higher level." (Docket Nos. 45, ¶ 24; 45–9, p. 18).

2. A "reject" is a contract or account which cannot be processed by the Production Department as a result of missing or erroneous information and is then returned to the salesperson for correction. (Docket Nos. 45, ¶ 31; 66, ¶ 31).

3. Matías's assertion in his affidavit that his supervisor "perceived my performance as being of excellence," (Docket No. 66–4, ¶ 26), directly contradicts his deposition testimony admitting his supervisor's perception that his work was less than satisfactory in these ways, (Docket No. 57–3, p. 42–49), and, therefore, does not create a factual dispute for summary judgment purposes. *See Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4–5 (1st Cir.1994) (finding that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed").

The Evaluation covering the year 1999 reflects that Matías was transferred to the Sales Support role "in order to allow him to learn more about the administrative processes of the sales function" and that his supervisory responsibilities had been decreased "in order to allow him time to focus on his own remedial program." [4] (Docket Nos. 45, ¶¶ 24, 25; 45–9, p. 19). In a March 2000 memorandum written by Axesa Sales Director Melvin Andújar, (hereinafter referred to as the "March 2000 Memorandum from Melvin Andújar"), Matías was informed that his work in the Sales Support position did not meet expectations and, as a result, he was being transferred to the position of Industry Specific sales representative in the Premise Division. (Docket Nos. 45, ¶ 26; 57–9). This change constituted a demotions.[5] (Docket No. 1, ¶ 13). At this time, Matías was thirty-nine years old. (Docket No. 45, ¶ 28).

In his role as Industry Specific sales representative, Matías continued to have problems with his job performance. In an August 2002 memorandum, his supervisor at the time, Carlos Villafañe wrote, "[a]s you know, during the past (2) years, on different occasions I have indicated to you those areas you must improve," listing areas requiring improvement, including applying proper procedures when processing contracts in order to diminish the number of rejects, processing closed cases daily in order to ensure proper processing of accounts, resolving rejects on a daily basis, turning in daily sales reports on a timely basis, and answering action forms (client requests and complaints) on a timely basis. (Docket Nos. 45, ¶ 30; 57–12). He concluded, "[s]hould this pattern continue, we shall take more severe disciplinary measures." (Hereinafter referred to as the "August 2002 Memorandum from Carlos Villafañe"). (Docket No. 57–12).[6]

Matías's 2004 and 2005 evaluations reflect that his supervisors perceived other problems with his performance. (Docket Nos. 45, ¶ 34; 57–13; 57–14). In 2004, his evaluation reflected that he needed to improve communication with his supervisor; resolve situations with clients on a more timely basis before they created inconveniences to clients and coworkers; improve preparation, quality, and flow of work which had been negatively affecting the work of other departments; improve quality and timeliness of processing of accounts which were often incomplete and had errors; and improve accuracy level and knowledge of procedures in contract processing. (Hereinafter referred to as the "Evaluation covering the year 2004"). (Docket No. 57–13). The Evaluation covering the year 2004 noted that although he had qualified for "Salesperson of the Year" in the Industry channel on the basis of

---

**4.** Matías's assertion in his affidavit that he was never placed in a remedial program, (Docket No. 66–4, ¶ 27), directly contradicts his deposition testimony admitting that he was placed in a remedial program and understood this to be a "development area" ("*area de desarollo* ") (Docket No. 57–4, p. 3–4), and, therefore, does not create a factual dispute for summary judgment purposes. *See Colantuoni,* 44 F.3d at 4–5.

**5.** Plaintiffs' claim that this move was a promotion (Docket No. 66, ¶ 26) contradicts his assertion in the complaint that the move was a demotion (Docket No. 1, ¶ 13) and cannot create a genuine issue of material fact for summary judgment purposes. *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61(1st Cir.1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding").

**6.** Matías asserts that his performance was satisfactory, but he does not challenge that the August 2002 memorandum memorializes the contemporaneous perception of his supervisor. (Docket No. 66, ¶ 30).

sales output, "he was disqualified due to his poor management of the market and for poor quality of work." (*Id.*). His 2005 evaluation, (hereinafter referred to as the "Evaluation covering the year 2005"), reflected that he needed to improve the quality of his administrative work, needed to improve the flow of work so as to not affect other departments, and that during the Isla 2005 sales canvass, "he submitted a Forecast for the closing of canvass which was not adjusted to the reality causing a projection of wrong results for his Unit [and][t]his caused a written sanction." (Docket No. 57–14).[7]

Furthermore, during the Isla 2005 sales canvass, Matías's supervisor, Enid Cintrón, told him that he displayed poor knowledge and management of the market assigned to him by providing forecasts and projections as to the expected sales, ultimately resulting in monetary losses to the company.[8] (Docket No. 45). In a June 2007 memorandum, his supervisor, Elba del Río, wrote to Matías that his quality of work was "totally unacceptable and more than deficient," and he had "simply not been complying with the minimum expectations" of his position. (Docket Nos. 45, ¶ 60; 57–20). The memorandum further indicated that it was "intended to notify you in an official manner that it is impera-

tive for you to comply with the goals outlined in the Professional Development Plan. Otherwise, we shall be compelled to take more severe disciplinary actions, including the termination of your employment for a repeated pattern of noncompliance with the minimum expectations of the position and poor performance during the last three years." (Hereinafter referred to as the "June 2007 Memorandum from Elba del Río") (*Id.*).[9]

In spite of these concerns, Matías was named Industry Sales Representative of the Year in 2001 and 2002 based on his sales results.[10] (Docket No. 45, ¶ 32). Furthermore, in 2005, Matías received merit-based salary increases based on receiving an "Excellence Award." (Docket Nos. 66–51, 66–52).[11]

On October 30, 2006, Matías, his wife Marta Nigaglioni, and their conjugal partnership (collectively "Plaintiffs") filed a complaint against Defendants under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634., the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101–12213, and several Puerto Rico state laws. Defendants moved for summary judgment, (Docket No. 52), and Plaintiffs responded thereto. (Docket No. 66). On July 3, 2008, Defendants replied

7. Matías asserts that his performance at this time was "of excellence" and complied with sales objectives, but he does not dispute that the 2004 and 2005 performance evaluations reflect the perception of his supervisors at the time. (Docket No. 66, ¶ 34).

8. While Matías asserts that the forecasts and projections provided to him by Ms. Cintrón were "simply impossible" to meet, and that she disregarded Matías's own forecasts, he provides no citation to record evidence in support of this assertion, and moreover, his arguments do not contradict the statement as to Ms. Cintrón's perception of his work. (Docket No. 66, ¶ 40).

9. Matías asserts that the content of the June 2007 memorandum is "false and unjustified" (Docket No. 66, ¶ 60), but he does not contest that the memorandum accurately reflects the perception of Ms. del Río at the time.

10. Matías states in another context, "it must be pointed out that there were only two Industry Specific Representative[s]." (Docket No. 66, ¶ 38).

11. The parties dispute whether Matías reached his sales goals during the Metro 2004, Isla 2005, and Metro 2005 sales canvasses, and the record is unclear as to these particular facts. (*Id.*, ¶ 34, 38; Docket Nos. 66, ¶ 34, 38; 66–61).

to Plaintiffs' opposition, (Docket No. 79), and Plaintiffs submitted their sur-reply. (Docket No. 100).

Essentially, Plaintiffs argue that Axesa discriminated against Matías on the basis of age on the alleged grounds that: (1) Axesa demoted him to the position of Premise sales representative in 2006; (2) three younger individuals were then hired for the position of Industry Specific salesperson; (3) Matías's direct supervisor, Enid Cintrón ("Cintrón"), and his indirect supervisor, Michael Báez ("Báez"), "constantly" made harassing and discriminatory comments about his age; (4) Axesa imposed unreasonable sales quotas on Matías; (5) his salary decreased; and (6) his supervisors issued unjustified disciplinary warnings to him. (Docket No. 66, ¶ 138). With respect to comments made by his supervisors in particular, Matías stated in his deposition that Cintrón made comments concerning his age, including that he lacked energy, he was too old for the workload, that his life was drifting away, and that the new owners of the company (e.g., Axesa) wanted new and young blood. (Docket No. 45, ¶ 141; 66, ¶ 141; 57–7, p. 18–22). Matías testified that Cintrón made these comments "often", and specifically, every time he would complain that his day had not gone well.[12] (Docket No. 57–7, p. 21). According to Plaintiffs, Defendants had a discriminatory animus based on theses comments. Plaintiffs also

raise a hostile work environment theory based on the alleged comments made by Matías' supervisors.

Additionally, Plaintiffs claim that Matías was retaliated against for requesting reasonable accommodation in March 2006; filing an EEOC charge on April 27, 2006; and testifying in the discrimination lawsuit of a coworker, Ana Julia Torres. (Docket Nos. 45, ¶ 44, 146; 66, ¶ 57–64). Plaintiffs base their retaliation claim on the following alleged adverse actions: (1) that Matías was changed from Industry Specific sales representative to Premise sales representative which included a drop of one level in pay scale; (2) he received consecutive memoranda concerning his job performance; (3) the quality of clients on his new route decreased; (4) he was placed on a sixty-day probation on or about June 21, 2007; (5) the company did not pay attention to his communications; and (6) his supervisors made retaliatory comments against him. (Docket Nos. 45, ¶ 145; 166, ¶ 145). Finally, Plaintiffs alleged discrimination and retaliation under several state laws.

Defendants' motion for summary judgment was referred to a Magistrate Judge, (Docket No. 90), who recommended that this Court grant Defendants' request for summary judgment. Specifically, the Magistrate Judge found that Plaintiffs failed to make a *prima facie* case of age discrimination.[13] According to the Magis-

---

**12.** Matías's assertion in his affidavit that Cintrón made these comments "constantly, on a daily basis" and "not only when I complained about my workload" (Docket No. 66–4, ¶ 89) directly contradicts his deposition testimony stating that she made the comments "[e]very time I complained when she called me on the phone", "[e]very time I complained. That was her way of answering me every time when I complained that my day had not gone well" (Docket No. 57–7, pp. 18–21), and, therefore, does not create a factual dispute as to the frequency of the alleged comments for

summary judgment purposes. *See Colantuoni*, 44 F.3d at 4–5. Further, his affidavit statement that Báez also made comments about his age directly contradicts his deposition testimony that "Michael [Báez] has not made any [remark] to me related to age" and should therefore be disregarded. (Docket No. 57–7, p. 22).

**13.** When there is no direct evidence of discrimination, as is the case here, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

trate Judge, Matías work failed to meet his employer's legitimate expectations. The Magistrate Judge stressed that there was ample evidence on the record that Matías was very deficient in the following areas: timeliness, interpersonal skills, responsiveness to clients, and quality of work. Additionally, the Magistrate Judge noted that even if Plaintiffs had made a *prima facie* case of discrimination and shifted the burden, Defendants would still have a legitimate nondiscriminatory reason for its employment decision, specifically, Matías' long history of unsatisfactory job performances. According to the Magistrate Judge, Plaintiffs would thus be unable to show that Defendants' proffered reason was a pretext for discrimination. The Magistrate Judge further indicated that no reasonable jury would conclude that the Defendants' proffered reason was a pretext based on the comments made by Cintrón.

As to Plaintiffs' hostile work environment claim, the Magistrate Judge found that the comments made by Matías' supervisors came in response to Matías' complaints, and were not severe enough for a reasonable jury to find that Matías was subject to a hostile work environment. Additionally, the Magistrate Judge con-

cluded that Plaintiffs' retaliation claim should also be dismissed. The Magistrate Judge determined that even if Plaintiffs had made a *prima facie* case of retaliation [14] and shifted the burden, Defendants would still have a legitimate, non-discriminatory reason for its employment decision, namely, Matías' long history of unsatisfactory job performances. According to the Magistrate Judge, Plaintiffs would be unable to show that Defendants' proffered reasons were a pretextual mask for retaliation. Finally, the Magistrate Judge addressed Plaintiffs' state law claims and recommended that they be dismissed. (Docket No. 112).

On January 20, 2009, Plaintiffs objected to the Magistrate Judge's Report and Recommendation. Specifically, Plaintiffs claim that the Magistrate Judge erred in concluding that Plaintiffs' age discrimination, hostile work environment, and retaliation claims should be dismissed. (Docket No. 115). On February 6, 2009, Defendants replied to Plaintiffs' objections. (Docket No. 117).

## STANDARD OF REVIEW

### 1. *Summary Judgment Standard*

"Summary judgment is appropriate when there is no genuine issue as to any

---

burden-shifting analysis applies, whereby, a plaintiff must establish "a prima facie claim of age discrimination by showing that: (1) he was at least 40 years old; (2) he met the employer's legitimate job performance expectations; (3) he experienced an adverse employment action; and (4) the employer had a continuing need for the services provided previously by the plaintiff." *Velazquez–Fernandez v. NCE Foods, Inc.,* 476 F.3d 6, 11 (1st Cir.2007). "The burden of production then shifts to the employer to put forth a legitimate, nondiscriminatory reason for the adverse job action." *Id.* (internal citations omitted). If the employer provides such a reason, "the final burden of persuasion rests with the employee to show, by a preponderance of the evidence, that the reason offered by the employer is merely a pretext and the real motiva-

tion for the adverse job action was age discrimination." *Id.* (internal citations omitted).

**14.** The above described *McDonnell Douglas* burden shifting framework also applies to retaliation claims. The only difference is the specifications of the *prima facie* proof standard which varies depending on the discrimination claim. *Reyes Vega v. Pepsi Cola P.R. Distrib. LLC,* 371 F.Supp.2d 21, 28 (D.P.R. 2005). "With respect to retaliation claims, the *prima facie* model requires plaintiffs to show that: 1) they engaged in a protected conduct; 2) they suffered an adverse employment action; and 3) there is a causal connection between the protected conduct and the adverse employment action." *Id.*

material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir.2008) (citing Fed.R.Civ.P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The opposing party must demonstrate "through submissions of evidentiary quality, that a trialworthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006) (internal citations omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." *United States v. Union Bank for Sav. & Inv. (Jordan)*, 487 F.3d 8, 17 (1st Cir.2007) (citing *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992)). Hence, summary judgment

may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006) (citing *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts as they are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### 2. Standard for Reviewing a Magistrate–Judge's Report and Recommendation

■ Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a district court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. §§ 636(b)(1)). If objections are timely filed, the District Judge shall "make a de *novo* determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera De Leon v. Maxon Eng'g Servs.*, 283 F.Supp.2d 550, 555 (D.P.R.2003). A district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections, the district court can assume that they have agreed to the Magistrate Judge's recom-

mendation. *Alamo Rodriguez*, 286 F.Supp.2d at 146 (citing *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985)).

## DISCUSSION

As a threshold matter, this Court notes that in their objections, Plaintiffs in a convoluted manner, mostly rehashed those arguments presented to the Magistrate Judge. This Court need not seriously consider an objecting party's filing where it simply restates the arguments the Magistrate Judge previously considered. *Castro–Rivera v. Citibank, N.A.*, 195 F.Supp.2d 363, 365 (D.P.R.2002). Accordingly, this Court will review de novo the Report and Recommendation without the benefit of any new argument of substance embodied in Plaintiffs' objections. *Id.* Specifically, this Court will review whether Plaintiffs' age discrimination claim, hostile work environment claim and retaliation claim should be dismissed. This Court further notes that Plaintiffs did not object to the Magistrate Judge's recommendation that their state law claims be dismissed. Accordingly, this Court will not conduct a de novo review of the Magistrate Judge's recommendation to dismiss these claims. Furthermore, in their sur-reply, Plaintiffs agreed to the dismissal of their discrimination and failure to provide reasonable accommodation claim under the ADA.[15] Accordingly, Plaintiffs' ADA claims must be dismissed.

### 1. *Age Discrimination Claim*

This Court will first address whether the Magistrate Judge correctly determined that Plaintiffs' age discrimination claim should be dismissed. Under the ADEA, it is "unlawful for an employer . . .

to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The framework for proving intentional discrimination on the basis of age, varies depending on the availability of direct evidence. Direct evidence "normally contemplates only those statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Vesprini v. Shaw Contract Flooring Services, Inc.*, 315 F.3d 37, 41 (1st Cir.2002) (citing *Melendez–Arroyo v. Cutler–Hammer de P.R. Co.*, 273 F.3d 30, 35 (1st Cir.2001)). "When the plaintiff has direct evidence of discriminatory animus, the case may be put to the jury without further ado." *Cardona Jimenez v. Bancomercio de P.R.*, 174 F.3d 36, 40 (1st Cir.1999).

Absent direct evidence or a "smoking gun," the plaintiff must meet the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Sabinson v. Trs. of Dartmouth College*, 542 F.3d 1, 4 (1st Cir.2008). The initial step in the burden-shifting framework requires the employee to establish a *prima facie* case of age discrimination. *See Torrech–Hernandez v. GE*, 519 F.3d 41, 48 (1st Cir.2008). The elements of a *prima facie* case may vary depending on the discrimination claim. *Reyes Vega v. Pepsi Cola P.R. Distrib. LLC*, 371 F.Supp.2d 21, 28 (D.P.R.2005). Generally, in order to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that: "(1) he was at least 40 years old; (2) he met the employer's legitimate job performance expectations; (3) he experienced an

---

**15.** The ADA prohibits disparate treatment of individuals with disabilities and imposes an affirmative duty on employers to offer a rea-

sonable accommodation to a disabled employee. *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir.2008) (internal citations omitted).

adverse employment action; and (4) the employer had a continuing need for the services provided previously by the plaintiff." *Velazquez–Fernandez,* 476 F.3d at 11. Establishing a *prima facie* case generates a rebuttable presumption of discrimination. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate and nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002). To do so, the plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez,* 304 F.3d at 69; *Mesnick,* 950 F.2d at 824.

■ Plaintiffs' attempt to make a *prima facie* case of discrimination fails because they fail to satisfy the second prong of the *prima facie* case standard. The second prong requires that the employee/plaintiff show that he met the employer's legitimate job performance expectations. In support of their claim that Matías met Axesa's expectations, Plaintiffs submitted evidence that Matías met and exceeded his sales expectations. Specifically, Matías presented a sworn affidavit that he was named Industry Sales Representative of the Year in 2001 and 2002 based on his sales results, (Docket No. 45, ¶ 32), and that, in 2005, he received merit-based salary increases based on receiving an "Excellence Award." (Docket Nos. 66–51, 66–52). Furthermore, in their objections, Plaintiffs stress that the Historical Trends for 2005, which they submitted as part of

their opposition to Defendants' motion for summary judgment, (Docket No. 66, Exh. XXII), supports their allegation that Matías performance during that year was excellent. Additionally, Plaintiffs point this Court's attention to the fact that Matías was promoted from Sales Support Coordinator to Industry Specific Representative. (Docket No. 66, ¶ 26). Moreover, Plaintiffs indicated that several of their witnesses stated in their depositions that Matías' performance was of excellence.

Defendants provided evidence that despite Matías sales results, since 1997, Matías had been admonished for failing in the following critical areas of his employment: timeliness, interpersonal skills, responsiveness to clients, and quality of work. Specifically, Defendants submitted the following evidence supporting their claim that Matías had failed in these aspects of his work: (1) the Evaluation from August 1997 to August 1998; (2) the Evaluation covering the year 1999; (3) the March 2000 Memorandum from Melvin Andújar; (4) the August 2002 Memorandum from Carlos Villafañe; (5) the Evaluation covering the year 2004; (6) the Evaluation covering the year 2005 and (7) the June 2007 Memorandum from Elba del Río.

According to Plaintiffs, there is a genuine factual controversy at to whether Matías met Axesa's employment expectations. Plaintiffs, however, are mistaken. First, this Court notes that the Historical Trends for 2005 submitted by Plaintiffs shows that Matías total net increase for the second half of the Metro 2005 Sales Canvas was a negative (-) 82.8% and 46.4% for the Isla 2005 Sales Canvas. (Docket No. 66, Exh. XXII). This does not support Plaintiffs' allegation that his performance in 2005 was of excellence. Second, Plaintiffs claim that Matías was promoted contradicts their allegation in the complaint that this move was a demotion. (Docket No. 1,

¶ 13). *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir.1992) (finding that party's assertion of fact in a pleading is a judicial admission and, as such, a plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment). Hence, these assertions and the evidence submitted in their support cannot create a genuine issue of material fact.

Plaintiff also mention that several of Matías' co-workers stated that Matías had an excellent performance in the work place. Specifically, Plaintiffs stress that Mrs. Anabelle Feliciano López, Mrs. Miriam Catrillo Balsa, Mrs. Ana Julia Torres Almán, and Mr. Abdiel Andújar Félix stated during their respective depositions that Matías' performance in the workplace was excellent. This allegation was mentioned in Plaintiffs' sur-reply and in their objections to the Magistrate Judge's Report and Recommendation. In both motions, Plaintiffs failed to comply with Local Rule 56(e) which required them to support these allegations with specific record citations. Since Plaintiffs failed to comply with this requirement, this Court will disregard Plaintiffs' assertion that Mrs. Anabelle Feliciano López, Mrs. Miriam Catrillo Balsa, Mrs. Ana Julia Torres Almán, and Mr. Abdiel Andújar Félix stated that Matías performance in the workplace was excellent. *See* Local Rule 56(e) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment").

Furthermore, the relevant evidence here is the perception of the employer not the perception of employees. *Torrech–Hernandez v. GE*, 519 F.3d 41, 49 (1st Cir. 2008) (finding that in the context of a prima facie case of age discrimination under the ADEA an employee's perception of himself is not relevant, rather, it is the perception of the decision maker which is relevant).[16] In the present case, Defendants submitted evidence that for nearly a decade Matías was deficient in many areas of his work. Plaintiffs did present evidence that Matías performed well in sales and argue that this evidence supports their proposition that the warnings presented by Matías' supervisors were based on false information. However, the evidence submitted by Plaintiffs does not controvert Defendants' evidence that Matías was deficient in other areas of his employment such as his timeliness, interpersonal skills, responsiveness to clients, and quality of work. As a result, this Court finds that Plaintiffs failed to satisfy the second prong of the prima facie case standard, which required them to demonstrate that Matías met Axesa's legitimate job performance expectations. Thus, Plaintiffs failed to make a *prima facie* case of age discrimination.

■ Moreover, this Court finds that even if Plaintiffs had made a *prima facie* case of retaliation and shifted the burden, Defendants still have a legitimate, non-discriminatory reason for their employment decision,[17] namely, Matías' history of

16. The statements made by Matías' coworkers could also not be considered because they are not decision makers and their perception is not relevant to determine whether Plaintiffs made a *prima facie* case of age discrimination under the ADEA.

17. For purposes of this summary judgment, the adverse employment action suffered by Matías is that he was demoted from Industry Specific representative to Premise sales representative. Matías offered evidence that this change to a less prestigious position was accompanied by a decrease in salary and commission. (Docket No. 66, ¶ 46). Plaintiffs aver that there was an additional adverse employment action. In their objections, Plaintiffs also argued that Matías had been

unsatisfactory job performances. *See Bennett v. Saint–Gobain Corp.*, 507 F.3d 23, 31 (1st Cir.2007) (noting that "[w]hen assessing a claim of pretext in an employment discrimination case, an inquiring court must focus on the motivations and perceptions of the actual decisionmaker" and not on "[s]tatements made by those who are not involved in the decisional process"). As Plaintiffs did not proffer any evidence to controvert the fact that Matías received negative job performance evaluations spanning from the year 1997 to 2007, Plaintiffs would be unable to show that Defendants' legitimate, non-discriminatory reason for its employment decision is pretextual. *See Davila v. Corporacion De P.R. Para La Difusion Publica*, 498 F.3d 9, 17 (1st Cir.2007) (finding that a court should not second guess an employer's decision to fire an employee as long as the employer presented evidence that it believed that the employee was not up to snuff and the employee presented no evidence to suggest that the employer thought otherwise).

■ In their objections, Plaintiffs submitted a list of comments made by Cintrón and Báez to support their contention that Matías' supervisors had a discriminatory animus towards him. Only statements made by the decision maker can be used to prove a decision maker's pretext. *Bennett*, 507 F.3d at 31. However, this Court cannot consider the comments made by Báez or Cintrón. Matías' affidavit statement that Báez also made comments about his age directly contradicts his deposition testimony that "Michael [Báez] has not made any [remark] to me related to age," (Docket No. 57–7, p. 22), and should therefore be disregarded. *Colantuoni* 44 F.3d at 4–5 (finding that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed"). As to Cintrón, we agree with the Magistrate Judge's determination that Plaintiffs failed to proffer any evidence which demonstrated that Cintrón's comments could be considered statements made by a decision maker. The record only shows that the comments were not related to the decisional process itself but were simply responses to Matías complaints whenever his day had not gone well. (Docket No. 57–7, p. 18–21). Thus, this Court finds that Cintrón's and Báez' alleged comments cannot be used to show that the Axesa harbored a discriminatory animus.[18]

In sum, this Court finds that Plaintiffs failed to make a *prima facie* case of discrimination because Matías did not meet his employer's legitimate job expectations.

discharged from his employment. Plaintiffs stated that they objected to the Magistrate Judge's conclusion that Matías had not been terminated. However, the Magistrate Judge never made such a finding. The Magistrate Judge stated in the Report and Recommendation that it would not consider Plaintiffs' allegation that Matías had been discharged because this theory was not alleged in the complaint. This Court sees no reason to rule otherwise as Plaintiffs made no mention in their complaint that Matías employment had been terminated. *Agri–Mark, Inc. v. Niro, Inc.*, 233 F.Supp.2d 200, 207 (D.Mass.2002) (noting that "[i]t is well-settled that plaintiffs are generally not permitted to raise brand new theories of their case in opposition to a motion for summary judgment, particularly where, as here, they have been given ample latitude to amend their complaint").

18. Plaintiffs also argued in their objections that Matías' demotion was based on false and discriminatory reasons which is evidenced by Cintrón's and Báez' comments. This Court need not consider this allegation since as just discussed, Cintrón's and Báez' comments cannot be used to show that Axesa harbored a discriminatory animus.

Furthermore, this Court finds that even if Plaintiffs had succeeded in fulfilling all the elements of a *prima facie* case, they would be unable to show that Axesa's legitimate non-discriminatory reason for its employment decision is pretextual. Accordingly, this Court holds that Plaintiffs' age discrimination claim will be dismissed.

### 2. *Hostile Work Environment Claim*

■ Plaintiffs claim in their objections that Báez' comments were sufficiently severe and pervasive to create a hostile work environment. Furthermore, Plaintiffs allege that "Axesa's actions and omissions undoubtedly created a hostile work environment."

■ To prove a hostile work environment claim under the ADEA "a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct 'is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive.'" *Rivera–Rodriguez v. Frito Lay Snacks Caribbean*, 265 F.3d 15, 24 (1st Cir.2001) (internal citations omitted). Moreover, when assessing whether a workplace is a hostile environment, this Court must "look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.* (internal citations omitted).

■ In the present case, this Court cannot consider Báez' comments to determine whether Matías' workplace was a hostile environment. As explained above, Matías' affidavit statement that Báez also made comments about his age contradicts his deposition testimony. Additionally, this Court will disregard Plaintiffs' general and conclusory allegation that "Axesa's ac-

tions and omissions undoubtedly created a hostile work environment." In order to defeat summary judgment, Plaintiffs cannot rest on conclusory allegations. *See Hadfield v. McDonough*, 407 F.3d 11, 15 (1st Cir.2005). Moreover, in their objections, Plaintiffs did not cite to any specific record citation in support of this assertion. Thus, Plaintiffs failed to again comply with Local Rule 56(e).

■ This Court also notes that Plaintiffs failed to object to the Magistrate Judge's conclusion that Cintrón's comments were "too mild" to form the basis for a hostile work environment claim. Therefore, this Court need not effect a *de novo* review of this portion of the Magistrate Judge's reasoning. *Davet v. Maccarone*, 973 F.2d 22, 31 (1st Cir.1992) (holding that a party's "failure to raise objections to the Report and Recommendation waives the party's right to review in the district court"). For the reasons just stated, this Court finds that Plaintiffs' hostile work environment claim has no merit and must be dismissed.

### 3. *Retaliation Claim*

■ Finally, this Court will review the Magistrate Judge's recommendation that Plaintiffs' retaliation claim be dismissed. The above described *McDonnell Douglas* burden shifting framework also applies to retaliation claims. The only difference is the specifications of the *prima facie* proof standard which varies depending on the discrimination claim. *Reyes Vega*, 371 F.Supp.2d at 28. "With respect to retaliation claims, the *prima facie* model requires plaintiffs to show that: 1) they engaged in a protected conduct; 2) they suffered an adverse employment action; and 3) there is a causal connection between the protected conduct and the adverse employment action." *Id.* "If the plaintiff makes a *prima facie* showing of retaliation, 'the burden shifts to the defendant to articulate a

legitimate, nondiscriminatory reason for its employment decision.'" *Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc.*, 425 F.3d 67, 84 (1st Cir.2005). "Finally, if the defendant presents such a reason, 'the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext masking retaliation.'" *Id.*

Essentially, in their objections, Plaintiffs argue that the Magistrate Judge failed to consider several adverse employment actions suffered by Matías. Whether Matías suffered adverse employment actions by Axesa is relevant to determine if Plaintiffs have made a *prima facie* case of retaliation. However, even if this Court were to find that Plaintiffs successfully made a *prima facie* case of retaliation, Plaintiffs would be unable to overcome the final burden of the *McDonnell Douglas* burden shifting framework. Namely, as discussed above, Plaintiffs would be unable to show that Axesa's nondiscriminatory reason for its employment decision, i.e. Matías negative job evaluations for the past ten years, is a pretext masking retaliation.[19] Consequently, this Court finds that Plaintiffs' retaliation claim must be dismissed.

## CONCLUSION

For the reasons stated above, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety. (Docket No. 112). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED.** Consequently, all of Plaintiffs' claims against Defendants shall be dismissed with prejudice. Judgment shall be entered dismissing the complaint.

IT IS SO ORDERED.

---

19. Plaintiffs once again argue in their objections that the comments made by Matías' supervisors are evidence of Defendants' discriminatory animus. For the reasons discussed above, this Court cannot consider the comments made by Báez or Cintrón.